## No. 562.

### MARY TRAVIS, TUTRIX, INDIVIDUALLY, VS. W. T. INSLEY, ADMINISTRATOR.

A case is here presented which makes it the duty of this court to enforce the law in relation to the obligations and liabilities of administrators. It is essential to the rights of all persons interested in successions, whether heirs or creditors, that the weighty and responsible duties of administrators should be, as the law emphatically demands, well and faithfully performed. They are expected and intended to be faithful agents, regarding strictly what the law requires of them and conforming in all their proceedings to its provisions, not speculators and spoliators looking to their own aggrandizement, reckless of the injury and ruin of those whose interests they have under their control. A sufficient showing has been made in behalf of the plaintiff in this case to grant the prayer of her petition for the removal of the administrator.

APPEAL from the Parish Court, parish of Richland. *H. C. Potts*, lawyer, selected to try this case. *Cobb & Gunby*, for plaintiff and appellant. *H. P. Wells & Williams* and *Morrison & Farmer*, for defendant and appellee.

TALIAFERRO, J. The plaintiff, who is the grandmother and tutrix of the minor and sole heir of L. P. Simms, instituted this action to remove W. T. Insley, who had procured the appointment of administrator of the estate of L. P. Simms. The grounds set up for removal are unfaithfulness and fraudulent mismanagement.

The administrator applied for and obtained an order of sale of all the personal property of the estate of Simms, for the purpose, alleged by him, of paying the debts of the succession. The tutrix obtained an injunction restraining the sale, on the ground, among others, that there were no debts due by the succession, except expenses of the last illness, and that these have been paid by the firm of Irwin & Simms, of which the decedent was a member. On trial of the injunction it was dissolved and no appeal was taken from the judgment. The suit to remove the administrator was also decided adversely to the plaintiff, and she prosecutes this appeal.

L. P. Simms was the commercial partner of the firm of Irwin & Simms, doing a large business in the parish of Richland. It appears that Simms

left a considerable amount of property, comprising his separate estate, independent of his equal interest in the partnership. His estate is shown to be solvent. Irwin qualified as liquidator to collect and settle debts of the firm, and controlled notes, accounts, and drafts due the firm amounting to about thirty thousand dollars. The complaint of the tutrix that Insley is acting unfaithfully and fraudulently in his administration she aims to make good by detailing various acts of his which she alleges to be wasteful, reckless, illegal, and uncalled for, causing loss and great injury to the estate, and a ruinous sacrifice of the property belonging to it. She shows that Simms died on the fifth of October, 1874; that on the tenth of October, 1874, the defendant applied for the administration of the estate; that this application was founded on no allegation of any right whatever to the administration; that he qualified on the third of November; that two days afterward he applied for and obtained an order for the sale of all the personal property of the succession to pay debts. It seems that at this juncture the grandmother of the minor having qualified as tutrix interposed and enjoined the sale, alleging there were no debts of any kind due by the succession of L. P. Simms, except expenses of the last illness, and that these were paid by the firm of Irwin & Simms; that Insley, when he obtained the order of sale, knew of no debts due by the estate. She avers with earnestness that at the date of the order of sale there were no debts liquidated or acknowledged by the administrator as due or owing by the estate. The order of sale embraced the selling in lump, it seems, of the undivided half-share of the property and effects of the partnership belonging to L. P. Simms among the rest of the property comprising his succession. This was remonstrated against as wholly illegal and irregular, no petition having been made, and because a sale thus made would inevitably result in irreparable injury, and in violation of the minor's rights. The injunction was dissolved, released on bond, as we have seen, and the administrator proceeded to a sale of the property on the thirtieth of December. The tutrix, subsequently to the sale, filed this suit to remove from office the administrator. In the petition in the case before us she reiterates the allegations made in her petition for injunction, and charges, further, that the sale was provoked, urged on, and made in violation of law by the administrator at the instigation of Irwin, and in his interest, and not in that of the minor. She alleges that although the order of sale directed the property to be sold for cash, at the appraised value by the inventory, yet no cash was paid to the administrator, but that all, or by far the greater portion, of the effects were sold to Irwin, the surviving partner, who retained the price, contrary to law. Interrogatories were propounded to Insley in relation to this sale, and among them one asking whether he received any money from Irwin for his purchase of Simms's interest in the stock of goods and

for other property of the estate of Simms purchased at the sale by Irwin. To this interrogatory he answered that he did not, assigning as a reason that Irwin was on his bond; that he knew of notes outstanding against the firm of Irwin & Simms and left the money in his hands to pay as they became due, which he said Irwin has paid.

It is alleged that, in the advertisement of the sale, the property to be sold was not clearly set forth and described as required by law, so as to inform the public of the specific property to be offered for sale, and with the view to attract bidders. But, on the contrary, the advertisement would discourage the attendance, especially of such as desired to purchase merchandise in small amounts, as the advertisement merely set forth that one half interest in a large stock of goods would be sold, and particularly where it was known that the owner of the other half would be a bidder. The stock of goods, it appears, was appraised by the invoices.

An examination of the evidence in this case brings us to the conclusion that all the allegations made by the plaintiff of bad faith and reckless conduct in office of the administrator, and the ruinous consequences to the interests and rights of the minor resulting therefrom, are fully established, with perhaps one exception only, and that one, the charge that the sale of the property was instigated and urged on by the influence of Irwin over the administrator. But, we must add that the evidence does not permit us to doubt that the acts of the administrator had a tendency to promote the interest of Irwin at the expense and detriment of the succession of Simms, and this to the knowledge and by the sanction of the administrator. Here a large estate, stated by Irwin on the stand as a witness, to be solvent, shown to be free from debt, except a medical bill or two and some other small debts, expenses of the last illness, is put under administration upon the application of a man not even alleging a claim of any sort to administer it, who, right upon the heel of his induction into office, files a petition for a sale of all the personal property of the estate, for cash, to pay its debts (almost the entire estate consisting, as it appears, of personal property), an order is obtained for the sale without the exhibition of a tableau or schedule of debts, and before any debt had been presented to the administrator for acceptance or acknowledgment. The sale is adroitly advertised so as to deter instead of inviting bidders. The surviving partner becomes the chief and almost exclusive purchaser, his purchases amounting to more than four thousand dollars. He pays not a cent. The administrator's reason for not demanding the payment we have already seen. Insley, the administrator, it appears, received only about one hundred dollars from the sale. What becomes, then, of his anxiety to raise money by a cash sale to pay debts of the estate, when he makes no demand of money

from the purchasers, and especially from the surviving partner, whose success in the liquidation of the partnership concern the administrator takes more interest in than he does in the administration of Simms's estate, for which he is acting under bond and oath? It could not have escaped his notice that Irwin had in his hands assets to a large amount, wherewith to pay the partnership debts. It is shown that this adminis-trator is a debtor of the firm of Irwin & Simms. Irwin is the surety of the administrator on his official bond, and was his surety on his bond to dissolve the injunction. The administrator is one of Irwin's sureties on his bond as liquidator of the partnership business.

We are satisfied that a case is here presented which makes it our duty to enforce the law in relation to the obligations and liabilities of adminis-trators. It is essential to the rights of all persons interested in succes-sions, whether heirs or creditors, that the weighty and responsible duties of administrators should be, as the law emphatically demands, well and faithfully performed. They are expected and intended to be faithful agents, regarding strictly what the law requires from them, and con-forming in all their proceedings to its requirements; not speculators and spoliators looking to their own aggrandizement, reckless of the injury and ruin of those whose interests they have under their control. We conclude that a sufficient showing has been made in behalf of the plain-. tiff in this case to grant the prayer of her petition.

It is therefore ordered that the judgment appealed from be annulled, avoided, and reversed. It is now ordered that William T. Insley, ad-ministrator of the estate of L. P. Simms, deceased, be and he is hereby removed from the office of administrator of said estate. It is further ordered that the defendant pay all costs incurred in the prosecution of this proceeding.

---

## ON APPLICATION FOR A REHEARING.

TALIAFERRO, J. Unfaithfulness in the discharge of his functions au-thorizes the discharge of an administrator from his office.

Has the administrator in this case been unfaithful in the discharge of the duties of his office?

He administered the *separate* estate of Simms. That consisted of cer-tain personal property and the interest of Simms in the partnership with Irwin. With this share of Simms in the partnership the adminis-trator of Simms's separate estate had nothing to do until a partition took place and Simms's portion of the estate was definitely ascertained. The liquidation of the partnership affairs and business belonged exclu-sively to the surviving partner; with its indebtedness the administrator

was not concerned.  It was no part of his business to sell Simms's interest in the partnership to raise money to pay the partnership debts.  His business was exclusively confined to the separate estate of Simms until after the partnership business was settled, and by partition that interest was ascertained and passed over to him.  When therefore he petitioned the court for a sale of all the personal property of Simms's estate to pay the debts of Simms's estate, which he alleged was necessary to do to pay them, this declaration was not true.  He proceeded to the sale therefore without grounds, and I call this unfaithfulness in his administration.  He advertised the sale of Simms's undivided share in the partnership *in globo* without regard to the interests of the estate, the manifest purpose of which was to drive off small bidders and enable the surviving partner to put it at a low figure, and this I call unfaithfulness.  When this interest in the partnership was adjudicated to Irwin under the cash sale, the administrator declined receiving a dollar, and turned the whole sum over to Irwin to go to pay partnership debts.  He acted, in my opinion, unfaithfully toward the separate succession of Simms, noting by the way that he caused the property to be sold under the pretense that there were debts of his separate estate to pay, and when the property was sold he collected no money to pay them.

In joining himself with Irwin as a *quasi* co-administrator, to provide means to settle the partnership affairs, he was acting unfaithfully to the separate estate of Simms, to which he should have had an eye single.  His counsel says Insley had a right to administer the estate.  A mere abstract, negative right he had.  He was without the shadow of any equitable right.  There was no reason why he should be appointed.  He knew that the legal tutrix of the minor, sole heir of Simms, was entitled by law to the administration of the estate.  He knew she was about to apply for it.  He used vigilance, however, to push for and get the office before the old woman, ignorant and unaware of the maxim that the law favors the vigilant, could procure it.  Such vigilance I am inclined to favor but little.  Neither morals nor propriety of conduct sanction a man's thrusting himself into the business of an estate without the remotest personal right in himself, and uncalled for by any party having rights.  This administrator has done this thing.  If he had the legal right to do it, he has that right with bad grace, and has exercised it unfaithfully toward the estate he swore to be faithful to.  When, therefore he asks this court to be continued in office, because a removal would not redound to his credit, he should not be listened to.  The court should look to the interests of the minor child whose all is in possession of this unfaithful administrator, and not to what people might think of his removal.  In worming himself into the office he took the risk of all the consequences, and he should abide by them.

There is pleaded in his behalf that he proceeded under legal advice. If he received bad advice, which has brought him into trouble, he must suffer for acting under that advice, if, as it is fully proved he did, he acted illegally and unfaithfully. When it is pleaded in extenuation of his illegal acts that he acted through ignorance and not by design, I hold that a greater reason is shown for his removal. A man both unfaithful and too ignorant to perform the duties of the office should be superseded by one faithful and competent.

For these reasons, and several more that might be readily stated, I oppose granting a rehearing.