156 So.2d 317 (1963)
Succession of Thomas Charles MULQUEENY.
No. 1124.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1963.
Rehearings Denied October 2, 1963.
Certiorari Refused November 12, 1963.
*318 George E. Konrad, Harry Nowalsky, New Orleans, for Miss Anna Elizabeth Early, in her individual capacity, appellant.
Frank P. Krieger, Augustus G. Williams, New Orleans, for Succession of Thomas Charles Mulqueeny.
Rene R. Nicaud, A. E. Blackmar, New Orleans, for Mrs. Mary Elizabeth Mulqueeny Prieto, appellee.
Felix O. Rousset, New Orleans, for Miss Dorothy Blackmar, Miss Margaret Blackmar, and Mrs. Alicia Blackmar Anderson, appellees.
Melvin J. Duran, New Orleans, for State Inheritance Tax Collector.
Before REGAN, YARRUT and HALL, JJ.
YARRUT, Judge.
This appeal is by the Testamentary Executrix (Miss Anna Elizabeth Early) from a judgment removing her as such, with an answer to the appeal by the Daughter and forced heir of deceased (Mrs. Mary Elizabeth Mulqueeny Prieto), that the judgment of the District Court be amended to levy against the Executrix the penalties provided by law.
The Appellee-Daughter and sole forced heir will be referred to hereafter as "Daughter," and the Appellant-Testamentary Executrix as the "Executrix."
Decedent left an estate inventoried at $117,744.15, consisting of real estate, various homestead savings accounts in New Orleans, and U. S. Savings Bonds. His nuncupative will, dated July 5, 1958, made no provision for the Daughter but, after bequeathing particular legacies to cousins and the Executrix, left the residue to the Executrix; named her Testamentary Executrix with full seizin and without bond, and named Augustus G. Williams as the succession attorney. The Executrix was not related to deceased by blood or marriage.
Deceased died May 16, 1962. On May 21, 1962, the Executrix had six homestead accounts in the amount of $44,504.75 in the name of "T. C. Mulqueeny or Anna E. Early," transferred to her name only. Three days later, upon her petition, she was confirmed as Executrix. She did not consult Mr. Williams, nor the notary who took the inventory, before she had the homestead accounts transferred to her individual name; but never denied that she had, merely insisted that they were given to her by the deceased.
The Daughter obtained a court order directing the Executrix to return the homestead accounts to the Succession, and to show cause why she should not be required to furnish bond. The State Inheritance Tax Collector intervened and joined in the request for the bond. The Executrix was ordered to, and did, furnish bond for $50,000.00.
*319 The Executrix then engaged personal counsel to rescind the bond order, and to have the homestead accounts declared her personal property; as well as U. S. Savings Bonds totalling $9,293.77, purchased by deceased and payable at his death to Executrix.
The Daughter then petitioned for the removal of the Executrix, on the following grounds:
1. The concealment and conversion of the homestead accounts totalling $44,504.75;
2. In failing to comply with the court's order to return these accounts to the succession;
3. Claiming ownership of the homestead accounts contrary to the last will and testament of the decedent, and in conflict with her responsibility as executrix; and,
4. In failing to cooperate with the succession attorney and the notary appointed to make the inventory.
The Daughter further asked for the imposition of the penalties provided in LSA-C.C. Art. 1029, so as to deprive the Executrix of any share in the accounts converted by her; and for 20% per annum interest thereon until restored to the Succession, as provided by LSA-C.C.P. Art. 3222.
To the Daughter's petition the Executrix filed exceptions of no right or cause of action, and an answer, coupled with a reconventional demand, re-urging her claim to the homestead accounts as her own personal property resulting from inter vivos gifts from the deceased.
The Daughter then filed exceptions of non-joinder of necessary parties defendant, and of no cause or right of action to this reconventional demand, as well as to the Executrix's original petition. Similar exceptions were filed on behalf of the particular legatees, made parties defendant by the Executrix, on the contention that the Executrix's suit was against the succession, and since the Executrix was both plaintiff and Executrix, she should be removed from office and a dative testamentary executor appointed, against whom her demands must be brought.
The District Court sustained the Daughter's exception of non-joinder, and overruled the Executrix's exceptions of no right or cause of action filed against the Daughter's petition for the Executrix's removal and for the imposition of penalties.
A trial on the merits was held on the petition for the Executrix's removal, resulting in the judgment removing the Executrix and appointing a dative testamentary executor (John T. O'Connor), with the further decree that, "in all other respects the matter be continued for trial on the merits."
The issues now on appeal are: The removal of Executrix; the Daughter's answer to the appeal that the judgment be amended to impose on the Executrix the statutory penalties; and the ownership of the homestead accounts.
The basis of the Daughter's demand for the removal of the Executrix and the imposition of the statutory penalties is, that the Executrix transferred the homestead accounts in the name of "T. C. Mulqueeny or Anna E. Early," to her name without authority of court, which penalties are fixed by LSA-C.C.P. Arts. 3097, 3182 and 3222, reading:
LSA-C.C.P. 3097
"No person may be confirmed as testamentary executor, or appointed dative testamentary executor, provisional administrator, or administrator who is:

* * * * * *
"(6) A person who, on contradictory hearing, is proved to be unfit for appointment because of bad moral character."
LSA-C.C.P. 3182
"The court may remove any succession representative who is or has become *320 disqualified, has become incapable of discharging the duties of his office, has mismanaged the estate, has failed to perform any duty imposed by law or by order of court, has ceased to be a domiciliary of the state without appointing an agent as provided in Article 3097 (4), or has failed to give notice of his application for appointment when required under Article 3093.
"The court on its own motion may, and on motion of any interested party shall, order the succession representative sought to be removed to show cause why he should not be removed from office. The removal of a succession representative from office does not invalidate any of his official acts performed prior to his removal."
LSA-C.C.P. 3222
"A succession representative shall deposit all moneys collected by him as soon as received, in a bank account in his official capacity, in a state or national bank in this state, and shall not withdraw the deposits or any part thereof, except in accordance with law.
"On failure to comply with the provisions of this article, the court may render a judgment against the succession representative and his surety in solido to the extent of twenty percent interest per annum on the amount not deposited or withdrawn without authority, such sum to be paid to the succession. He may also be adjudged liable for all special damage suffered, and may be dismissed from office."

And LSA-C.C. 1029, reading:
"Heirs, who have embezzled or concealed effects belonging to the succession, lose the faculty of renouncing; and they shall remain unconditional heirs, notwithstanding their renunciation, and shall have no share in the property thus embezzled or concealed."
The District Court rendered judgment of dismissal, maintained the exception of non-joinder, and referred all other issues to a later trial on the merits, giving as reasons, inter alia, the following:
"* * * On the merits the court finds that the executrixthe Code of Civil Procedure, Article 3182 says the court may remove any succession representative who has become disqualified, has become incapable of discharging the duties of his office. I need not read the balance of the article. The court finds that the executrix in this case, Miss Early, has become incapable of discharging the duties of executrix of this succession for the reason that Miss Early is claiming property which from all the evidence before the court adduced today, she should know, and must know, is property belonging to the succession. She has persisted and is now persisting in this claim of property and she has gone out and hired lawyers other than the lawyer appointed by the testator to represent her in order that she, as an individual, might bring suit against the succession.
"The court is bound to conclude that it is to the best interest of this succession that Miss Early be removed as executrix and the court does now order the removal of Miss Early as executrix of this succession. The court further orders that Miss Early shall deliver to the dative testamentary executor, who will be appointed by the court, all of the property which is now in her possession belonging to this succession, including the homestead books, which she illegally and wrongfully had transferred to her personal account after the death of Thomas Mulqueeny."
In his last will, in addition to leaving her certain real estate and "any and all Homestead stock or any interest I may have therein" and making her his residuary legatee, testator appointed her Executrix, with seizin and without bond.
Deceased left nothing to his Daughter, not even mentioning her in his last will. *321 However, in a previous olographic will, dated August 30, 1947, he referred to her as follows:
"* * * I leave to my daughter Mary $10.00 who has not been friendly to me for years, having seen me about twice in about eighteen (18) years and for no reason that I know ofshe has humiliated me in the eyes of all my friendsI might also add that I was not invited to her wedding and for divers other reasons I take this stand."
The Daughter is the only child of decedent's marriage to her mother, from whom he was divorced in 1916.
Executrix for 45 years was deceased's secretary in a railroad office until he retired and, for the last six years of his life, while he was confined in a hospital, she took care of his affairs, collected his rents and paid his bills, on occasions withdrawing money from the homestead accounts, during all of which decedent seldom saw or heard from his Daughter. At his death, testator was 87 and Executrix 75.
The record clearly points to the fact that deceased and Executrix were intimate friends for nearly 50 years after his divorce from the Daughter's mother.
The homestead accounts were listed by name in the Succession inventory, with a recital by the notary that the Executrix admitted she transferred them to her own name and claimed they belonged to her. There is not a scintilla of evidence that she attempted concealment or did anything more than persist in her claim that the homestead accounts were hers by virtue of gifts from deceased. She employed her own attorneys to represent her. They contended below, and here, that the opening of the accounts by the deceased in their joint names was a manual gift by him to her, and she had the right to withdraw the money before or after his death as her own, citing LSA-R.S. 6:751 of the Building and Loan Code, reading:
LSA-R.S. 6:751
"When shares have been subscribed for, or shall hereafter be subscribed for, or when any certificate of any class or evidence of indebtedness shows the investment of funds in any association, in the names of two or more persons, payable to either, or payable to either or some of the survivors, such funds or any part of them or any interest or dividend on them may be paid, on due delivery of the certificate, book, or other evidence of indebtedness, to either of the persons, whether the other or others are living or not; and the receipt or acquittance of the person paid is a complete release and discharge of the association for any payment made, with respect to anyone."
On the other hand, the Daughter and inter venors, in challenging the manual gift, invoke the provisions of LSA-C.C. Arts. 1536 and 1539, reading:
LSA-C.C. 1536
"An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
LSA-C.C. 1539
"The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality."
At the outset, we must hold that LSA-R.S. 6:751 of the Building and Loan Code, is solely to protect such associations when making payment of accounts carried in alternative names, and in no wise affects the law relating to donations inter vivos of movables or incorporeals.
Since decedent opened the homestead accounts payable to him or the Executrix, he did not divest himself of title thereto in favor of the Executrix, but continued *322 his dominion and control over them with the power of withdrawal, in whole or in part, without her knowledge or consent. The deceased often expressed his desire that she should have these accounts, but he never executed a valid inter vivos manual gift to her.
The Executrix admitted all moneys deposited to the homestead accounts were furnished by deceased; and it is clear that he opened the accounts in both names for the convenience of having her pay his hospital, doctor and household bills without requiring his signature.
The Executrix did open an account in the name of the Succession, and deposited therein all moneys she collected as Executrix, except the homestead accounts.
The fact that she claimed the homestead accounts as her own under the belief they were gifts from deceased; that the transfer of the accounts by the several associations to her after his death, was permitted by law; that she made no effort to conceal their transfer; that the notary recited in the inventory, after listing the homestead accounts by name, that the Executrix admitted the correctness thereof, but claimed they belonged to her as a gift from the deceased; that the deceased made her the legatee of these accounts (naming the homesteads in which they were); and made her his residuary legatee and Executrix, without bond, clearly absolves her from any suggestion of embezzlement or wrongdoing that would warrant her removal. The worst that can be imputed to her is that she acted hastily and unwisely to accomplish what otherwise would have come to her in due time.
The fact that she employed her own attorneys to represent her in the Daughter's challenge of her ownership of the accounts, and for her removal as Executrix, was the proper step to take. In fact, the testamentary attorney for the succession approved her action in employing her personal attorneys, and the Succession was adequately represented by him.
Regarding the right of Executrix to act as such while asserting a claim against the Succession, there is no law that requires her removal or resignation. All required is that the other heirs, legatees and creditors, be represented. The testamentary attorney, able and experienced, represented the Succession; the attorney for the State Inheritance Tax Collector represented the State; while the Executrix, in her individual claim, retained her own attorneys. There were no debts due by the deceased, except the costs of administration; hence, no creditors to be represented, except by the testamentary attorney.
We find no statute or case holding that an executrix must abandon her valid claims against the succession or lose her executorship. A fortiori, where the attorney for the succession is named by the testator and not by the executor.
Regarding the U. S. Savings Bonds, since they were payable on death to the Executrix individually, they became her personal property, governed by the federal law and not the state law. Free v. Bland, 369 U.S. 663, 82A S.Ct. 1089, 8 L.Ed.2d 180. However, to what extent these bonds figure in calculating the legitime of the Daughter is governed by state law, to be determined on the final hearing on the merits, as reserved in the District Court's judgment.
The District Court maintained the exception of non-joinder of the Succession. The issues herein were provoked by an only child and forced heir against the Executrix; in which other legatees and the State Inheritance Tax Collector intervened; and there were no creditors of deceased, hence all parties who might be adversely affected by the Daughter's suit for the dismissal of the Executrix, and the inclusion of the homestead accounts as Succession assets, were before the court and ably represented by counsel, and any judgment rendered would be binding on all interested parties. *323 The exception of non-joinder should have been overruled.
For the above and foregoing reasons, the judgment of the District Court removing the Testamentary Executrix and appointing the Dative Testamentary Executor, and maintaining the exception of non-joinder, is reversed, and the District Court is now ordered to re-instate the Testamentary Executrix, to remove the Dative Testamentary Executor; and to proceed with the settlement of the Succession quoad all heirs, legatees and creditors, according to law and the views expressed herein; all costs of this proceeding in both Courts to be borne by Appellee, Mrs. Mary Elizabeth Mulqueeny Prieto
Reversed and remanded.