CHASEZ, Judge.
This is a second appeal to this Court in this succession proceeding. The previous report can be found at La.App., 156 So.2d 317. This appeal is from a judgment on oppositions to a provisional account and a proposed tableau of distribution.
Thomas Charles Mulqueeny was survived by one forced heir, his daughter, Mrs. Mary Mulqueeny, wife of Dr. Albert Prieto. His will did not provide for Mrs. Prieto but made various other bequests. The substance of the will follows:
“I leave the property, numbers 4513 and 4515 Eden Street, in the City of New Orleans, Louisiana, to Dorothy Blackmar, my cousins daughter. I also leave her five thousand ($5,000.00) dollars cash.
*328 “I leave five thousand ($5,000.00) dollars, cash, to Alicia Blackmar, widow of E. T. Anderson.
“I leave five thousand ($5,000.00) dollars, cash, to Margaret (Margie) Blackmar. Both of the latter are also daughters of my deceased cousin, Katherine Kelly Blackmar.
“I leave the property hereinafter described to Anna Elizabeth Early of 732 City Park Avenue, New Orleans, Louisiana.
"1. Nos. 4708 and 4708]/2 Orleans Avenue; New Orleans, Louisiana.
“2. Nos. 1408 and 1410 St. Anthony St. New Orleans, Louisiana
“3. Lot, with improvements thereon having the number 1414 St. Anthony Street, New Orleans, Louisiana.
“4. Lots, in or near, Abita Springs, St. Tammany Parish, Louisiana.
“I also leave to the said Anna Elizabeth Early any and all Homestead stock, or any interest I may have therein, in the following named Building & Loan Associations :
“1. Eureka Homestead Society, 2. Fidelity Homestead Association, 3. First Homestead and Savings Association, 4. Hibernia Homestead & Savings Association, 5. Home Building and Loan Association, 6. Homestead Savings Association, 7. Security Building and Loan Association, 8. Union Savings and Loan Association. I revoke all former wills ever made by me.
“I leave anything else, property or other assets, that I may die possessed of, to the said Anna Elizabeth Early and appoint her Executrix of my will and Estate, with seizin and without bond.
"I appoint Augustus G. Williams Attorney at Law to handle my succession and the execution of this will, according to law.”
The inventory filed in this proceeding re-fleets that the decedent died possessed of:
Cash $ 167.00
Jewelry 1.00
Young Men’s Gymnastic Stock 30.00
U.S. Savings Bonds payable on death to Miss Anna E. Early 9,293.77
Real Estate:
Orleans Parish 46,500.00
St. Tammany Parish 1,500.00
Homestead Stock 60,052.18
All the real estate is disposed of by the particular legacies to Miss Dorothy Blackmar and Miss Anna E. Early. All the homestead stock is included in the bequests to Miss Anna E. Early in the latter part of the will. The U. S. Savings bonds under the federal law are the property of Miss Early.
The particular bequests contained in the will thus exceed the total assets of the estate. The proposed tableau of distribution therefore did not recognize the three cash legacies to the Blackmar sisters under the rule that legacies of a particular object must take precedence over a legacy of cash, LSA-C.C. 1635. The legitime was to be paid to Mrs. Prieto and the legacies reduced pro rata in order to contribute to the legitime. Mrs. Prieto was further taxed in the tableau with the fee of the dative testamentary executor as a cost of Court in the prior appeal.
Oppositions were filed to the account by the Blackmar sisters and Mrs. Prieto. The Blackmar sisters contended that the sums stated in the homestead accounts were erroneous and the revenues were not included ; that the tableau of distribution was erroneous in not recognizing the cash legacies ; that the particular legatee should not contribute to the payment of the debts and legitime; and that the U. S. Savings bonds payable on death to Miss Early should be used to pay the debts and legitime. In *329 effect the Blackmar sisters contended that Miss Early was the residuary legatee and should therefore jbear the debts and leg-itime, and should also be burdened with the particular legacies.
Mrs. Prieto also opposed the amounts in the homestead accounts and the omission of the revenues from the account; she alleged that $8,500.00 in inter vivos gifts to Miss Early should be added to the mass to figure the legitime; that Miss Early’s fee as testamentary executrix should be disallowed as impinging upon the legitime under LSA-C.C.P. art. 3353; that the fee of the dative testamentary executor should not be charged to her as a cost of Court of the prior appeal; and that the bonds should be charged with the debts of the succession.
The testamentary executrix, Miss Early, answered the oppositions admitting the error in the amount reported to be in the homestead accounts and corrected it by stipulation; she also admitted that $8,500.-00 in inter vivos gifts should be fictitiously added to the mass to calculate the leg-itime. She reiterated her position that she should be allowed to withdraw the U. S. Savings Bonds from the succession free of any debts and contended that the homestead stock was hers by virtue of a manual gift and in the alternative, the homestead stock was a particular legacy.
A revised account was presented at the trial of the oppositions which had not been properly advertised. The trial judge allowed this account into the record as an exhibit. It contained the stipulated changes; further, the additional debts incurred and an increase in the reserve for taxes. This revised account was not ruled upon by the lower Court, except as to one item contained therein, an additional reserve for estate taxes.
The Trial Court rendered judgment approving the debts, but allowing federal estate tax only in the amount incurred, and disallowing the fee of the testamentary executrix. It fixed the legitime of Mrs. Prieto, burdening it .with earlier Court costs of $300.00, and ordered that the fee of the dative testamentary executor be paid out of the mass. The three cash legacies of the Blackmar sisters-were recognized; Miss Early was recognized as the particular legatee of the homestead stock but only after the debts and expenses of the succession and the particular legacies were paid out of those accounts. Miss Early and Miss Dorothy Blackmar were recognized as particular legatees of the real estate bequeathed to them in the will. Miss Early was recognized as owner of the U. S. Savings Bonds and as the residuary legatee. The particular legacies were to be reduced proportionately for they exceeded the disposable portion. All inconsistent items in the account were ordered stricken.
Miss Early, the appellant, asks that the judgment be reversed in part, recognizing her as owner of the homestead stock by an inter vivos manual gift and alternatively as particular legatee; that the three legacies of the Blackmar sisters be considered lapsed, and of no effect; that the U. S. Savings Bonds be decreed to be her property and delivered to her; that the fee of the dative testamentary executor be considered costs and charged to Mrs. Prieto as costs of the prior appeal; and that an increase in the reserve for federal income taxes be allowed. The Blackmar sisters answered the appeal, praying that the judgment be amended so as to decree Miss Early to be the residuary legatee of the cash in the homestead accounts thus entitled only to what remains after the payment of the debts, expenses, the legitime and the particular legacies of cash. Mrs. Prieto, the forced heir, did not appeal or file an answer to this appeal, and accordingly her opposition is not before us.
We consider Miss Early’s argument that the homestead stock is hers by virtue of a manual gift to be foreclosed by the prior opinion in this case found in La.App., 156 So.2d 317. We shall not discuss it
*330 The United States Savings Bonds included in the above inventory were payable on death to Miss Early. These bonds are governed by federal law and not by state law, although they will be fictitiously added to the estate in the calculation of the legi-time, as already decided in the earlier appeal in this case, 156 So.2d 317.
With the removal of the U. S. Bonds from the estate, and after payment of the debts, there are not enough funds remaining to pay all of the particular legacies in the will. The provisional account and tableau of distribution therefore failed to recognize the cash legacies to the Blackmar sisters. The District Court ruled in favor of the Black-mars by ordering the payment of their cash legacies out of the homestead accounts (subject, however, to reduction in favor of .the forced heir, Mrs. Prieto).
Miss Early appeals from that part of the judgment, both as executrix and as legatee of the “Homestead Stock, or any interest I may have therein”. Her contention is that LSA-C.C. art. 1635 requires that the legacy to her, because it is one of a “certain object”, must first be discharged before legacies of money can be discharged.
Appellees point out that the “Homestead Stock” was actually in the form of optional payment share accounts, rather than certificates of stock. Their fundamental argument is that the will cannot, consistently with LSA-C.C. art. 1712 requiring effectuation of the testator’s intent, be construed so as to give them nothing, because it is perfectly clear that testator intended them to benefit from his will. Their position is that under article 1713, requiring the disposition in their favor to be “understood in the sense in which it can have effect, rather than that in which it can have none”, dictates understanding it as affecting the only “cash” testator had, which they argue was found in his homestead accounts. They suggest many laymen consider such accounts as the equivalent of bank savings accounts, and both vsuch accounts as the equivalent of cash. Appellees urge that in the later legacy to Miss Early, the words “or any interest I may have therein,” modify the legacy of “Homestead Stock,” and that under established rules of testamentary construction, the Court is obliged to give effect to every word, if possible without defeating the general purpose of the will, Succession of Price, 202 La. 842, 13 So.2d 240 (1943); and that the Court must therefore give such effect to the quoted words as, from the will itself, it appears the testator intended.
Appellees argument, as we view it, is really twofold. One argument is that the words “or any interest I may have therein” must be interpreted, in the light of the earlier “cash” legacies when testator never had any cash, as meaning “any interest that may remain after paying the cash legacies”. The second argument is that the testator having, under the circumstances and by rule of LSA-C.C. art. 1713, meant “cash from my homestead stock”, since he meant something and had no other “cash” to the amounts bequeathed, a later bequest of “any and all Homestead Stock, or any interest I may have therein” does not revoke the earlier legacies, since under LSA-C.C. art. 1719 a general legacy, i. c., a legacy of all of a genus, does not include things of that genus included in earlier legacies.
We note at this point that LSA-C.C. 1723, revoking an earlier legacy when a later legacy is contradictory, is not applicable here because, as pointed out in Succession of Berdon, 202 La. 607, 12 So.2d 654 (1943), there is no internal inconsistency between the two legacies involved; were there cash or other undisposed of property in a sufficient amount in addition to the homestead accounts, all legacies could be discharged. In Berdon, the legacies totalled 1,200 shares of bank stock when testator had never had more than 775 shares; the Court held' the later legacies (some in a codicil) did not revoke the earlier ones since, had there been sufficient stock, all could have been satisfied.
The Berdon case also contains an expression on the question of what is a “certain *331 object” for purposes of LSA-C.C. art. 1635. The Court there states that a legacy of 500 shares of named bank stock is not a legacy of a “certain object”, where no stock certificate was expressly identified by number or otherwise; the Court therefore applied by analogy the second sentence of article 1635 to grant a pro rata distribution of the available bank stock. But most significant to a correct appreciation of Berdon, we believe, is that there the other legacies involved were not of money, but of the same named bank stock. Berdon is therefore not a case in which legacies of a number of shares of stock were reduced in order to pay money legacies. And we cannot suppose that a legatee of, e. g., 100 shares of X corporation stock (whether testator leaves 100 shares, or more, or less) should be deprived of any part of his legacy to pay monetary legacies. In any event Berdon does not so hold.
Nevertheless, the question of the testator’s intent has very much trouble and prolonged our deliberations in this case. We are obliged to principally endeavor to ascertain that intent in interpreting the will, “without departing, however, from the proper signification” of its terms, LSA-C.C. art. 1712; and we must interpret the legacies to he effective rather than ineffective, LSA-C.C. art. 1713. Our jurisprudence includes in its expressions on the subject that no word or clause should be declared surplusage if it can be given effect, Succession of Lambert, 210 La. 636, 28 So.2d 1 (1946); every part of the will should be given effect, consistent with the general purpose as gathered from the entire testament, Gueydan v. Montagne, 199 La. 38, 33 So. 61 (1902); the whole will must be considered, and every word effectuated if possible without defeating the general purpose of the will, Succession of Price, supra; and a bequest construable as including all, or only part, of the estate should be construed as of part only in order to give effect to the other dispositions of the will, Succession of Simo, 205 La. 592, 17 So.2d 889 (1944). These rules of construction, and others alluded to in counsel’s briefs, we believe to be correctly stated, although none of the cases cited above or in briefs control the present matter. Applying these rules to the present will, nevertheless, in the light of the further fact that testator never had any appreciable “cash” except in his homestead accounts (and disregarding completely the proffered evidence of testator’s intentions and meanings expressed outside the will), it may be argued that testator’s intent was that his cousins were each to have $5,000.00 out of his homestead “cash”. The whole scheme of the will is, first, provision for a house and $5,000.00 for “my cousin’s daughter”, and $5,000.00 each to two other legatees, “also daughters of my deceased cousin, Katherine Kelly Blackmar”; second, in substance, everything else to Miss Anna Elizabeth Early. But the will did not simply make Miss Early a universal residuary legatee; it gave her virtually everything else as'' particular legacies and then made her residuary legatee of what was, by then, an insignificant residuum. (The case is therefore not assimilable to Succession of Burnside, 35 La.Ann. 708 (1883), holding words following “the residue * * * of every description” merely illustrative of the universal residuary legacy.) Still, the overall picture in the will indicates the cousins were intended to be benefitted; we can hardly suppose that the very same testator who deliberately omitted his daughter at the same time included some (not all) cousins intending that they, like his daughter, should take nothing under his will. We believe, then, that it would appear he intended them to have $5,000.00 each.
But we find ourselves unable to escape the injunction of LSA-C.C. art. 1712 against departing from the proper signification of the words the testator himself employed in expressing his intent. We cannot as it is often expressed, rewrite the will. Assuming, arguendo, testator had had no homestead accounts but only the immova-bles, we would still believe that he intended his cousins to have something; but this belief would not justify our rewriting his will so as to exact the money legacies from the particular legatees of the immovables; *332 LSA-C.C. art. 1635 directs that the legacies of money in such cases must fall if the residue is .insufficient.
We believe, moreover, that in this case we can no more rewrite the will to make “cash” read “cash out of my homestead stock” than we could rewrite it to read “cash out of my immovable property”.
In respect of the words in Miss Early’s legacy, “or any interest I may have therein,” we observe that the accounts were registered as joint accounts of decedent and Miss Early (which occasioned the earlier litigation herein), and decedent may therefore have been expressing the' idea that, in his erroneous layman’s belief, he no longer had full and absolute dominion over them — he may have believed even that Miss Early would entirely own them on his death. Moreover, the words may also have expressed his thought that, whatever might be in those accounts at his death, whether increased by deposits or decreased by withdrawals made after the will, he wanted Miss Early to have it, “any and all”.
Accordingly we are of the opinion that the problem is not one of ambiguity in the testament, but one merely of inadequate assets to discharge all of the unambiguous particular legacies. Article 1635 is therefore controlling, and Miss Early’s legacy of the named homestead stock “cannot be affected by the other legacies which are for money”, Succession of Geddes, 36 La.Ann. 53 (1884).
We must, therefore, with all due respect to the learned District Judge, reverse that portion of his judgment which charged the homestead accounts with the cash legacies. And we must also reverse that part of the judgment which charged all of the debts and expenses of the succession against the homestead accounts, since those accounts were the subject of .a .particular legacy to,.Miss Early, and all • the-particular legacies should be..pro rata charged with these items.
Another question on this appeal arises from the fact that the forced heir, Mrs. Prieto, was cast in the prior appeal for all costs. Miss Early contends that the fee of the dative testamentary executor should therefore be charged against the legitime of Mrs. Prieto. The Trial Court refused this plea and we think properly so. The fee of the dative testamentary executor is properly a cost of administration, not a cost of Court, and as such it should be charged to the mass.
Miss Early also contends that the increase in the reserve for estate taxes should have been allowed. The increased amount was submitted on the revised account which was presented to the Court on the day of the trial of the oppositions, and was never advertised as required by law. It was proper, therefore, for the trial Court to refuse to increase the reserve for taxes for the simple reason that the formalities required by the law were not fulfilled. However, since the amount owed for taxes and other items have- doubtless increased between.the time of filing.the account and this appeal, and since the account was only provisional in any event, we believe the proper procedure is to remand the matter in order that an up-to-date account, consistent with this opinion, can be filed.
A correct determination of the estate taxes and a proper proration of debts and expenses will also affect the computation of the net legitime, and we will therefore also have to set aside that part of the judgment fixing the value of the legitime and remand for redetermination in a proper accounting by the executrix.
For the foregoing reasons, the judgment appealed from is:
(1) Affirmed, pro-forma, insofar as it maintained the opposition to the fee of Miss Early as executrix, as to which no appeal was taken; affirmed insofar as it allowed the sum of $5,341-.31 on account of federal estate taxes and the other -.debts shown on pages 1, 2 and 3 of the account *333 and to that extent approved and homolo-gated the account;
(2) Affirmed insofar as the $1,000.00 fee of the dative testamentary executor was ordered paid out of the mass;
(3) Reversed insofar as it decreed the homestead accounts deposits of money available to pay debts and ordered the executrix to pay the debts therefrom; and it is now ordered, adjudged and decreed that the said homestead accounts were the subject of a particular legacy in favor of Miss Early, liable only to reduction for pro rata payment of the debts and expenses;
(4) Affirmed insofar as it maintained the opposition of Mrs. Prieto, the forced heir, and limited the costs due by her on the prior appeal to $300.00, and held her legitime had been erroneously computed; and set aside and remanded for a new calculation of her legitime in accordance with law and this opinion;
(5) Reversed insofar as it maintained the opposition of Dorothy Blackmar, Mrs. Alicia Blackmar Anderson and Margaret Blackmar and decreed that their cash legacies had not lapsed; and it is now ordered, adjudged and decreed that the said legatees o.f. cash take nothing under their legacies for want of assets in the succession to satisfy them;
(6) Affirmed, pro-forma, in decreeing Dorothy Blackmar a particular legatee of the property 4513-4515 Eden Street, New Orleans', as to which no appeal was taken;
(7) Affirmed insofar as it decreed Miss Early a particular legatee of decedent’s interest in the named homestead accounts, and reversed insofar as it decreed those accounts cash and subjected them to the payment of all debts and expenses of the succession and to the particular legacies of cash; all as provided by our judgment in paragraph (3) herein;
(8) Affirmed insofar as it decreed Anna Elizabeth Early a particular legatee of the following properties: 4708-4708^ Orleans Avenue, 1408-1410 St. Anthony Street, and 1414 St. Anthony Street, all in New Orleans; and Lots in St. Tammany Parish, Louisiana;
(9) Affirmed insofar as it decreed Miss Early the residuary legatee, and affirmed insofar as it decreed her the owner of the U. S. Government Bonds payable on death to her;
(10) Affirmed pro-forma, insofar as it decreed that the particular legacies and the donations inter vivos exceed the disposable portion and shall be reduced proportionately, as to which no appeal was taken; .
■ (11) Amended insofar as it decreed that all items contained in the account inconsistent with the trial court judgment are stricken, and it is now ordered, adjudged and decreed that all items in sáid account inconsistent with the opinion and judgment of this Court are stricken;
And it is further ordered, adjudged and decreed that all debts and expenses of the succession (other than the costs above charged to Mrs. Prieto), including all costs of this appeal, are to be charged against the mass of the succession, except that the mass of the succession shall bear no part of the federal estate taxes attributable to the U. S. Government Bonds payable on decedent’s death to Miss Early; such pro rata of estate taxes to be borne by Miss Early individually.
Affirmed in part; amended and affirmed in part; reversed in part; rendered in part and remanded for further proceedings according to law and this opinion.