HOOD, Judge.
The late Sydney Pincus Kaffie died at his domicile in Natchitoches Parish on November 7, 1971, leaving a last will and testament in which he named J. Titus Frederick and P. J. Guepet as co-executors of his estate. The will and two codicils were probated, and Frederick and Guepet were appointed and qualified as co-executors. Arthur C. Watson, Esquire, was engaged by them as their attorney.
Several weeks thereafter, Arnold Jack Rosenthal, Bernie F. Rosenthal, Jr., and Hortense Edna Rothman, two nephews and a niece of the testator, filed a petition seeking to have the co-executors removed, and to have the attorney employed by them also removed. Pursuant to that petition, a rule was issued by the trial court directing Frederick, Guepet and Watson to show cause why they should not be removed as co-executors and attorney, respectively, and why plaintiffs in this proceeding should not be appointed as co-executors with William T. Skye, Esquire, as the.ir attorney.
After trial of the rule, judgment was rendered by the trial court on April 18, 1972, in favor of defendants, Frederick, Guepet, and Watson, rejecting plaintiffs’ demands and dismissing the rule with prejudice. Two of the plaintiffs, Arnold Jack Rosenthal and Bernie F. Rosenthal, Jr., have appealed from that judgment.
The issues presented on this appeal are whether Frederick and Guepet have a conflict of interest sufficient to require that they be removed as co-executors of the testator’s will, and whether Watson should be removed as attorney for the co-executors on the ground that he was engaged initially by only one of them.
The testator, Sydney Pincus Kaffie, never married and he never adopted anyone. His mother and father predeceaséd him. His two nephews and his niece, plaintiffs in the present proceeding, were his closest relatives. His estate was inventoried and appraised at $953,065.06.
He left a statutory will dated November 11, 1968, and two codicils. One of the codicils was dated June 17, 1969, and the other was dated April 2, 1970. The will and the codicils were probated and ordered executed on November 12, 1971. Shortly thereafter plaintiffs in the present proceeding instituted an action seeking to have the will and codicils annulled, but that action was later dismissed with prejudice by plaintiffs. The present action to remove Frederick and Guepet as co-executors, and *321 to remove Watson as their attorney, was instituted on February 14, 1972.
In his will, the testator made several special or particular legacies, and he left the remainder of his estate to the “Sydney Kaffie Trust,” which was created by that will. Frederick and Guepet were named in the will as co-executors of the testator’s estate and as co-trustees of the Sydney Kaffie Trust. The following four persons were named as income and principal beneficiaries, in equal proportions, of that trust: Arnold Jack Rosenthal, Bernie F. Rosenthal, Jr., Mrs. Hortense Edna Roth-man (plaintiffs in the present suit), and J. Titus Frederick (one of the defendants). During the five year term of the trust, the net income and $1,000.00 of the corpus was to be paid to the four beneficiaries annually-
In each of the two codicils, the testator made an additional cash bequest. In one of them he bequeathed $10,000.00 to defendant Frederick, and in the other he gave a smaller sum of money to a legatee who is not a party to this action.
Plaintiffs allege that defendants Frederick and Guepet should be removed as co-executors because of “conflicts of interest.”
The following acts, incidents or circumstances are alleged as showing a conflict of interest on the part of Frederick: (1) On July 1, 1970, the testator executed a deed conveying real property to Frederick and to the latter’s son. Plaintiffs believe that this transaction was void, either because it was a fraudulent simulation or because of lesion beyond moity, and that the co-executors should institute suit against Frederick and his son to annul that deed. (2) On October 22, 1969, the testator purportedly donated real property to Frederick. Plaintiffs believe that this donation is void because of fraud, deception and undue influence exercised by Frederick on the donor, and that suit should be instituted by the co-executors to rescind that donation. (3) For many years prior to the testator’s death, Frederick and the testator conducted numerous joint business affairs, and they continued to do so during the two year period immediately prior to Kaffie’s death, while the latter is alleged to have been senile. Plaintiffs believe that the co-executors should investigate all of these transactions to determine if fraud, deception, undue influence and misrepresentation was practiced, and that they should require an accounting by Frederick of all joint business affairs with the testator over the last 50 years. (4) Frederick has shown hostility toward plaintiffs for many years prior to the testator’s death. (5) About six months before Kaffie’s death, Frederick stated that he had burned some of the private and confidential records of the testator.
Plaintiffs allege the following circumstances as showing that defendant Guepet has a conflict of interest: (1) Guepet was the testator’s tax and financial advisor for 35 years prior to the latter’s death, and as such he worked closely with Frederick. The decedent consulted Guepet with reference to the 1970 deed to Frederick and his son and the 1969 donation to Frederick. (2) Guepet also was the tax and financial advisor to Frederick, and to one of the business enterprises entered into jointly by Frederick and Kaffie, for 35 years prior to the latter’s death. (3) Because of Guepet’s many years of close association with Frederick, plaintiffs expect him to be an adverse witness and in a position of conflict of interest in the suits which plaintiffs feel will be filed to annul the deed and the donation, and in the demand for an accounting from Frederick which plaintiffs allege will be made by the succession representatives. (4) The investigation of the business transactions between the testator and Frederick which plaintiffs will demand “may well uncover” irregularities in the decedent’s financial affairs, which “may well necessitate Guepet to take a position of an adverse and/or unfriendly witness, which would likewise place him in a conflict of interest position.” (5) Guepet has *322 shown hostility toward plaintiffs since the testator’s death.
Plaintiffs contend that a fiduciary relationship exists between the succession representatives, on the one hand, and the heirs of the decedent or the legatees named in the will, on the other. They point out that while a succession is under administration, the succession representatives are the proper parties to sue to enforce a right of the decedent or of his succession (LSA-C.C.P. art. 685), and that if Frederick and Guepet are allowed to remain as co-executors they could not be expected to file suit against Frederick or to be fair and impartial witnesses in the litigation which plaintiffs anticipate will be forthcoming. They argue that this conflict of interest prevents Frederick and Guepet from serving as co-executors, and that they thus should be removed.
The grounds for removing a succession representative are set out in LSA-C.C.P. art. 3182, as follows:
“The court may remove any succession representative who is or has become disqualified, has become incapable of discharging the duties of his office, has mismanaged the estate, has failed to perform any duty imposed by law or by order of court, has ceased to be a domiciliary of the state without appointing an agent as provided in Article 3097(4), or has failed to give notice of his application for appointment when required under Article 3093.”
There are no allegations in the petition to the effect that Frederick and Guepet, or either of them, have “become disqualified,” or that either “has mismanaged the estate,” or that any other circumstances exist which would warrant the removal of either of them as a co-executor under the provisions of the cited article. “Conflict of interest” is not listed in that article as a ground for removal of a succession representative.
Plaintiffs contend, however, that the grounds for removal listed in Article 3182 are not exclusive, and that “conflict of interest” has been recognized by courts of this state as a ground for removing a succession representative. Cited as authority for that argument are the cases of Travis v. Insley, 28 La.Ann. 784 (1876), and Succession of Houssiere, 247 La. 764, 174 So.2d 521 (1965).
Neither of the cited cases hold that a succession representative may be removed solely because of a conflict of interest, unaccompanied by acts of mismanagement. In Travis v. Insley, supra, the administrator was removed because of acts of mismanagement actually committed while he was serving as administrator — not solely because of a conflict of interest. In Succession of Houssiere, supra, the Supreme Court refused to remove the administratrix because the evidence failed to establish “mismanagement as a fact on the part of the administratrix.” The court considered arguments that the administratrix had a conflict of interest, but it held that that was not a sufficient basis for removing her because “there has been no act or omission on the part of the administratrix that has redounded to the disadvantage of the estate or its heirs.”
Tn one of the cited cases, therefore, the administrator was removed because of actual acts of mismanagement committed while the estate was being administrated. In the other case the court refused to remove the administratrix because the evidence failed to show acts of mismanagement. No acts of mismanagement have been alleged or proved in the instant suit, so the cases cited and relied on by plaintiffs are not pertinent to the issues presented here.
Applicable here, we believe, are the cases of In Re Mulqueeny’s Succession, 156 So.2d 317 (La.App. 4 Cir. 1963), and Succession of Favalora, 169 So.2d 197 (La.App. 4 Cir. 1964).
The Mulqueeny case involved an action by the testator’s daughter for the removal *323 of the executrix, who was not related by blood to the decedent. The executrix had transferred to her individual name some homestead accounts which the daughter contended and the court apparently concluded were owned by the estate. The issue of whether the testator, prior to his death, had donated the accounts to the executrix was being litigated when the action to remove the executrix was filed. The executrix had engaged her own attorney to represent her in that litigation. Our brothers of the Fourth Circuit Court of Appeal held that the fact that the executrix was asserting a claim against the succession, and thus had an interest adverse to that of the estate or the heirs, was not sufficient to warrant her removal as executrix. The court said:
“Regarding the right of Executrix to act as such while asserting a claim against the Succession, there is no law that requires her removal or resignation. All required is that the other heirs, legatees and creditors, be represented. The testamentary attorney, able and experienced, represented the Succession; the attorney for the State Inheritance Tax Collector represented the State; while the Executrix, in her individual claim, retained her own attorneys. There were no debts due by the deceased, except the costs of administration; hence, no creditors to be represented, except by the testamentary attorney.
“We find no statute or case holding that an executrix must abandon her valid claims against the succession or lose her executorship.”
In Succession of Favalora, supra, the children of the decedent sought the removal of the administratrix on the ground that there was a “conflict of interest” between her and the heirs. The Fourth Circuit Court of Appeal used the following language in holding that such a conflict of interest did not constitute a ground for removal of the administratrix:
“By said rules said appellants also sought the removal of Mrs. Favalora as administratrix. One ground urged for her dismissal is that there is a conflict of interest between Mrs. Favalora and the heirs in that she is claiming certain property as belonging to her separate and paraphernal estate, while the heirs claim such property belongs to the community. Such conflict of interest, if it can be called such, does not constitute a ground warranting the removal of the administratrix from office. The dispute could readily be resolved by the court on proper legal proceedings instituted by the heirs.”
The evidence in the instant suit shows that the testator executed a deed conveying property in the City of Natchi-toches to Frederick and the latter’s son for a consideration of $31,000.00, most of which purchase price was payable in monthly payments extending over a period of nine years. Since that time Frederick and his son have made payments monthly to Kaffie, or to his succession, of more than the amount of each monthly payment required in the contract. The evidence shows, therefore, that the transaction was not a simulation. Plaintiffs called a real estate appraiser who valued the property conveyed at $118,000.00, using a cost approach, and at $65,000.00, using the income approach. His testimony was not convincing as to value, however, and we agree with the trial judge that it does not establish that the sale was invalid because of lesion beyond moity.
Plaintiffs also produced an act of donation executed by Kaffie purporting to donate to Frederick the testator’s undivided interests in two tracts of land. The act is regular in form, and we find nothing in the evidence which tends to show fraud, deception or the exercise of undue influence by Frederick.
The evidence also shows that the testator and Frederick engaged in many joint busi *324 ness ventures over a period of about 50 years prior to Kaffe’s death. They apparently were very dose friends during all of that time. Kaffie, in fact, noted in the act of donation that Frederick “has been a good, true and loyal friend for these many years,” and in his will the testator stated:
“I suggest to the executors, trustees and beneficiaries named in this my last will and testament to consult my close personal friend and associate, J. Titus Frederick, as to the sale, disposition or lease of any of the properties, real or personal, herewith vested in this my lást will, or included in the trust estate, and to consider carefully his advice. He is familiar with values in Natchitoches Parish and in my investments and securities, and I have implicit faith, both in his judgment and integrity. I know his advice will always be sound and to the interest of my loved ones.”
We find nothing in the record to indicate that any fraud, deception, undue influence or misrepresentation was practiced by Frederick on the testator in connection with any of these business ventures. The evidence indicates that Kaffie was alert and was able to manage his own business affairs at all times—except for a period of about four months prior to his death. Also, the evidence does not support plaintiffs’ allegations that Frederick has shown hostility toward them or that he burned records of the testator.
With reference to Guepet, the evidence shows that that defendant filled out income tax returns for the testator and for Frederick, and that he at one time filled out a Federal Gift Tax return for Kaffie. The record also shows, however, that for several years he also made similar returns for each of the three plaintiffs. He was not a tax and financial adviser for either Kaffie or Frederick, and we find nothing in the record which could justify a conclusion that he would be a hostile witness or would not testify truthfully in any of the litigation which plaintiffs anticipate will be instituted.
The evidence presented in this case does not establish that either the deed to Frederick and his son or the act of donation to Frederick is void for any of the reasons alleged. Plaintiffs, of course, do not argue that the nullity of those transactions has been established here. Their position is that they believe that both documents are void, that they have shown sound reasons for taking that position, and that there thus exists a conflict between plaintiffs, on the one hand, and the co-executors on the other as to the validity of these transactions. They contend that this conflict of interest is sufficient to warrant the removal of the co-executors.
It is not necessary for us to rule on the general legal question of whether proof of a conflict of interest on the part of a succession representative can ever be sufficient, in itself and without a showing of acts of mismanagement, to warrant his removal from office. We feel that the evidence presented in this case does not show that an actual conflict of interest exists either on the part of Frederick or on the part of Guepet, and that the facts established here are not sufficient to support plaintiffs’ demand that the co-executors be removed. The evidence, considered in a light most favorable to plaintiffs shows only that there is a possibility that conflicts of interest exist or may develop on the part of the co-executors, that plaintiffs fear that such conflicts do exist, and that it is possible that because of these suspected conflicts of interest the co-executors will not administer the estate fairly.
Applying the rule set out in In Re Mulqueeny’s Succession, supra, and Succession of Favalora, supra, we hold that the possible conflicts of interest shown here are not sufficient to warrant the removal of either of the co-executors. See also Succession of Roy, 192 So.2d 603 (La.App. 3 Cir. 1966); Succession of Browne, 244 *325 La. 36, 150 So.2d 555 (1963); Succession of Bates, 227 So.2d 19 (La.App. 2 Cir. 1969).
As stated in Succession of Browne, supra, “the courts as far as possible carry out the intention of the testator by seeing that the administration of the estate is committed to the one designated by him.” (244 La. 36, 150 So.2d 555).
We find no error in the judgment of the trial court which rejects plaintiffs’ demands that the co-executors be removed.
Plaintiffs contend that Arthur C. Watson should be removed as attorney for the co-executors because he was engaged unilaterally by one of them, rather than jointly with the other co-executor as required by Article 3192 of the Louisiana Code of Civil Procedure. The evidence shows that Watson was engaged jointly by the co-executors. There thus is no merit to this claim of plaintiffs.
Plaintiffs contend, finally, that the trial court erred in refusing to grant them a suspensive appeal from the judgment which rejected their demands that the co-executors and the attorney engaged by the latter be removed. Since plaintiffs’ demands were rejected, there was nothing in the judgment which could be executed and thus there was nothing to suspend.
Plaintiffs apparently assume that the granting of a suspensive appeal from the last mentioned judgment (on the rule to show cause why the co-executors and attorney should not be removed) would have the effect of suspending the appointment of the co-executors and the attorney pending this action. Such an assumption, if entertained by plaintiffs, would be erroneous for at least two reasons. In the first place, no appeal was taken from the order appointing these succession representatives. And, secondly, if an appeal had been taken from such an order, our law provides that the order appointing that representative shall be executed provisionally notwithstanding an appeal therefrom. LSA-C.C.P. arts. 2122 and 2974.
We find no error in the action of the trial court in refusing to grant a suspen-sive appeal to plaintiffs in this instance.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff s-appellants.
Affirmed.