No. 407.

J. J. HASLEY and J. B. RUTLAND, Tutor, v. PHINETTA B. HASLEY.

Where a will was made in these terms: "At home, March 4, 1870. I this day make my will. I want my wife to keep and maneg all of my estate both reil and pursnel deuren her lif time and be Lowed to sell eny of the land for not les than the apprsment and I apoint my wife administrater;

Held—That said will contains no substitution and no *fidei commissum*, which are never to be presumed;

That the words of a will, like those of a law, are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words;

That said will, construed by these rules, means that the testator intended to give the usu· fruct of his estate to his wife, and is valid.

APPEAL from the Parish Court, parish of Ouachita. *Baker*, J. *R. G. Cobb*, for plaintiffs and appellees. *R. W. & R. Richardson*, for defendant and appellant.

LUDELING, C. J.    David Hasley died, in Ouachita parish, on the ninth October, 1873. Phinetta B. Hasley, the defendant, is his widow; and the plaintiffs are children, by a former marriage, and forced heirs of David Hasley.

The deceased left a large estate, a considerable portion whereof is claimed to be community. On the fifteenth January, 1873, was probated, as the last will and testament of David Hasley, the following instrument:

　　　　　　　　　　　　　　　　　　　　" At Home, March 4th, 1870.
" I this day make my will.

" I want my wife to keep and maneg all of my estate both reïl and pursnel deuren her lif time and be lowed to sell eny of the land for not les than the apprsment and I appoint my wife administrater.

　　　　　　　　　　　　　　　　　　　　　　" DAVID HASLEY."

The plaintiffs sue to annul the probate and to have the will declared void, on the following grounds :

That the document is not a will, " as it does not convey anything to the supposed universal legatee, and is contrary to the laws of this State, containing a substitution and *fidei commissa* clause contrary to law; that plaintiffs are the sole forced heirs of David Hasley, and that said document, so pretended to be probated on the fifteenth of January, 1873, attempts to deprive them of their legitimate portion secured to them by law; and that said pretended will is void for want of meaning, and that the probate thereof is null and void."

The probate judge decided that the will was null for want of meaning, and annulled the probating thereof.

The defendant has appealed.

We observe that the grounds, upon which the will is attacked, are inconsistent, but we will proceed to notice them.

There is clearly no substitution. Rachal *v.* Rachal, 1 R. 115; C. C. 1520. Nor do we think that there is a *fidei commissum.* Nimmo *v.* Bonney, 4 R. 176; 3 An. 494.

The Code, in abolishing substitutions and *fidei commissa*, has for its object the prevention of the evil of tying up property in the hands of individuals, for a length of time, and placing it out of commerce. The reverse of this appears to have been the intention of the testator in this case. Substitutions and *fidei commissa* are never presumed. Unless the will can not be understood otherwise than in the sense of establishing a substitution or *fidei commissum*, it will be maintained. " A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none." C. C., art. 1713.

And the words of a will, like those of a law, " are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words." C. C. article 15.

Construed by these rules, we are bound to hold that the testator intended to give the usufruct of his estate to his wife.

The plaintiffs' counsel contends that the words " keep and manage,'

only convey the idea of administration, or agency. The second definition of the word "keep," given by Worcester, is "to have in possession, use, care, or custody." "Keep is a very general term, and is variously applied. A person keeps what is his own, and retains what is not taken from him. He keeps his farm or property, and retains an office." When Paul tells Peter he can keep his gun, or cart, or farm during a certain period, he will be understood to give Peter the use and enjoyment of the property. And such, we think, was the meaning in which the word was used by David Hasley. That he intended to constitute the instrument in question his last will can not be doubted, for he says so in unequivocal language. Can it be supposed that he desired to make his will solely to impose a burden upon his aged spouse, in case she should survive him, by giving her the care and management of his property, without its use and enjoyment?

It appears that on the day after David Hasley made his will, Mrs. Hasley went before a notary and made her will by public act, as she could not write. In that will she gave the use and usufruct of all her property to her husband during his life, and appointed him her executor.

We think it is a fair inference to be deduced from the facts, that the making of said wills was the result of conference and a mutual understanding between the two spouses; that they should make reciprocal testaments in favor of each other, giving the survivor the use and usufruct of the testator's property.

The will of David Hasley has all the formalities of an olographic testament, and it is capable of being understood in the manner interpreted by us. It is our duty therefore to maintain its validity.

It is therefore ordered and adjudged that the judgment of the lower court be set aside, and that there be judgment in favor of the defendant, and against the plaintiffs, rejecting their demand with costs.

---

ON APPLICATION FOR A REHEARING.

The application for rehearing is refused. The only question under the written agreement in the record before the court a qua and this court for decision, was the validity or nullity of the will. Our opinion and decree refer to that question alone.