HIGGINS, Justice.
 

 The decedent died on May 14, 1941, leaving a widow but no forced heirs. He left a -will in olographic form dated October 18, 1939, in which he made a number of particular bequests and instituted his wife, his sister, and the surviving children of a deceased brother, as residuary legatees, in the proportion of an undivided one-third each. All of the particular legacies were given free of all the estate and inheritance taxes, th'e executors being directed to pay these taxes. On April 2, 1941, he executed a codicil, in olographic form, to his will, revoking the legacies in favor of the surviving children of his deceased niece, May Beth Fore Hermann, namely, Claire Elizabeth, Mary Louise, and Joan Leone Hermann, of $10,000 each of the preferred capital stock of Berdon Campbell Furniture Company, and fifty shares each of the capital stock of the Whitney National Bank, and stating “ * * * and in lieu of this bequest I now will and bequeath jointly to said three surviving children of my deceased niece above named, Five hundred (500) shares of the capital stock of the Whitney National Bank, * * * ” in trust with the bank, to be held until each beneficiary reaches the age of twenty-five years, and he ordered that the net revenue from this stock be paid to them quarterly.
 

 On the dates that the decedent executed his will-and codicil and at the time of his
 
 *612
 
 death he owned only 775 shares of stock in the Whitney National Bank. In the will he bequeathed 850 shares of Whitney National Bank stock and in the will and the codicil thereto he disposed of 1,200 shares of stock in the Whitney National Bank, whereas at no time did he own more than 775 shares thereof.
 

 The attorney for the Hermann minors contends, as there are insufficient shares of bank stock to be delivered to all of the legatees, the testator has ordered two things, which are contradictory, to be done and, therefore, the last bequest prevails over the first, because it is presumed that the testator persevered in his intentions expressed in the codicil and, hence, there is a tacit revocation.
 

 The attorneys for Mrs. Hortense Berdon, the deceased’s widow, to whom he bequeathed, under the provisions of his will, his home on West Beach Boulevard, together with the furniture and fixtures therein, the usufruct of his home on Napoleon Avenue, and certain particular legacies, including 500 shares of Whitney National Bank stock, contend that as all of the particular legacies of the respective legatees of shares of stock of the Whitney National Bank are valid (because they have neither been expressly nor tacitly revoked, except as to the 50 shares each to the Hermann minors), and it was the intention of the testator that all of the legacies be carried out, therefore, the executors should be instructed to purchase sufficient additional shares of stock of the Whitney National Bank to fulfill all of the legacies. In the alternative, they contend that, if the shares of stock are not available for purchase, the legatees be paid proportionately the difference in cash, the value to be fixed as to the date of the de cujus death. Further, in the alternative, they state that the legacies should be proportionately reduced, there being insufficient stock to pay all of them in full.
 

 The attorneys for the executors point out that the United States has demanded additional estate taxes approximating $141,-000; and that after paying the debts, charges, and legacies of specific things, there will be a net estate of about $160,000, so that, if the claim of the United States government is allowed in full, there will not be sufficient funds with which to purchase the 425 shares of stock at $75 or more per share. They commented upon the issues raised and submitted the matter to the court.
 

 The trial judge held that the bequests in the will and the codicil thereto of more of a particular kind of shares of stock than the testator owned causes a contradiction and, therefore, what the testator ordered to be done in the codicil prevails over what he ordered to be done in his will, citing Article 1723 of the Revised Civil Code. He further decreed that the 425 shares of bank stock that the estate was lacking be taken from the particular bequest of 500 shares in favor of the widow, on the theory that that was the first particular bequest of stock and each oi the later particular legacies prevailed o /er it. The result was that there was sufficient stock to carry out all of the particular legacies for Whitney National Bank stock, except the widow’s legacy of
 
 *614
 
 500 shares, the trial judge only awarding her 75 shares.
 

 The widow appealed and the Hermann children have answered the appeal, asking that their stock be delivered in trust at once, in order that they might obtain the revenues therefrom quarterly, as provided in the codicil.
 

 We shall discuss the issues in the above order.
 

 We quote the pertinent Articles of the Revised Civil Code, as follows:
 

 “1691. The revocation of testaments by the act of the testator is express or tacit, general or particular.
 

 “It is express when the testator has formally declared in writing that he revokes his testament, or that he revokes such a legacy or a particular disposition.
 

 “It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will.
 

 “It is general when all the dispositions of a testament are revoked.
 

 “It is particular when it falls on some of the dispositions only, without touching the rest.”
 

 “1692. The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities.
 

 “1693. Posterior testaments, which do not, in an express manner, revoke the prior ones, annul in the latter only such of the dispositions there contained as are incompatible with the new ones, or contrary to them, or entirely different.”
 

 “1695. A donation inter vivos, or a sale made by the testator of the whole or a part of the thing bequeathed as a legacy, amounts to a revocation of the testamentary disposition, for all that has been sold or given, even though the sale or donation be null, and the thing have returned into the possession of the testator, whether by the effects of that nullity, or by any other means.”
 

 “1696. The sale, made by the testator, of an object bequeathed, even by act under private signature, after the date of the testament, produces a 'revocation of the legacy, if the act be entirely written, signed and dated with his hand.”
 

 “1700. The legacy falls, if the thing bequeathed has totally perished during the lifetime of the testator.”
 

 “1723. When a person has ordered two things, which are contradictory, that which is last written is presumed to be the will of the testator, in which he has persevered, and a derogation to what has before been written to the contrary.”
 

 The record shows that all of the legacies of the Whitney National Bank stock were made without any reference whatsoever to any particular share of stock and, therefore, while these are legacies under a particular title they are not legacies of a particular object, because, we reiterate, none of the shares of stock are described by reference to a certificate of stock. All of the legacies are limited to- a particular kind of bank stock, namely, Whitney National Bank stock. None of the legatees was granted any preference over the others and it now develops that there are not
 
 *616
 
 sufficient shares of stock to carry out all of the legacies in full.
 

 It is well settled in this State that a person who wishes to make a last will and testament must conform to the law in executing it. If he wants to revoke his will in whole or part or a particular legacy, he must likewise do so, according to law.
 

 In the instant case, the only express revocation of a bequest is the one in favor of the Hermann minors in the will.
 

 A testator may likewise tacitly revoke a previous will, codicil, or bequest, provided he conforms with the law in doing so. In order to have the effect of a tacit revocation, the subsequent disposition or act of the testator must show a change of will or intention by the last disposition or act being incompatible with, contrary to, entirely different from, or contradictory with the former. For instance, if the bequest is of a particular object and the testator during his lifetime sells, or destroys, or gives it away, there is a tacit revocation of this particular legacy of a particular object. If, in the codicil, the testator gives a particular object to a different person than he bequeathed it to in his will or .previous codicil, the legacy is tacitly revoked.
 

 In the case at bar, while we are dealing with particular legacies they are not particular legacies of a particular object, consequently, the bequests of 500 shares of the Whitney National Bank stock to the Hermann minors in itself does not show that the testator changed his intention by doing something incompatible with, contrary to, entirely different from or contradictory with his previous express intention and thereby tacitly revoked any one of the previous bequests of Whitney National Bank stock to the other particular legatees.
 

 In giving his interpretation when different wills or codicils contradict each other, Pothier (Oeuvres de Pothier Vol. 13, Paris 1825 (Dabo Jeune, Libraire), Traite des Donations Testamentaires, Chap. VII, pp. 199-224, Louisiana Legal Archives, Vol. 1 —Project of the Civil Code of 1825, pp. 223-224) states that where a testator bequeaths to one person several times the same sum of money in his will and codicils, it will not be supposed that the testator repeated himself through inadvertence but it will be presumed that the legatee during the interval of time won new favor with the testator, who made additional bequests to him rather than to say there was any contradiction between the bequests, and therefore each legacy is valid and should be carried out.
 

 In the case of the Succession of Lizzie Lee Homan, 202 La. 591, 12 So.2d 649, this day decided, we held that where the testator in the will and the codicil gave to the same parties identical numbers of shares of homestead stock without describing the certificates of stock and did not expressly revoke the former bequests or limit the latter ones, the legacies were not repetitious but cumulative, because they were not contradictory to, incompatible with, contrary to, or entirely different from each other and, therefore, there was no tacit revocation of the first bequests by the second ones.
 

 In the Succession of Stallings, 197 La. 449, 1 So.2d 690, the testatrix gave par
 
 *618
 
 ncular legatees $5,000 and $10,000, respectively, and in codicils, gave the same parties identical amounts, without expressly revoking the previous bequests or limiting the bequests to the latter ones only. We held that each legatee was entitled to double legacies because there was nothing to indicate that the testatrix intended the legacies to be in the disjunctive since the second bequests were not incompatible with, contrary to, entirely different from, or contradictory with the first bequests, and therefore there were double valid legacies, as the first ones were not tacitly revoked by the later bequests.
 

 While the facts in the two cited cases are not like those of the instant one, those authorities are in point on the question of tacit revocation, because they follow the doctrine announced in the Articles of the Code that in order for the testator to show a change of intention, his subsequent acts or dispositions must be contradictory with, contrary to, incompatible with, or different from his previous ones.
 

 In the case under consideration, it is clear that if the testator had owned 1,200 shares of stock of the Whitney National Bank at the time of his death, each of the legacies would have been fully carried out or discharged. This demonstrates that there is nothing contrary, contradictory, or incompatible between the bequests in the will and the codicil. It is obvious that there is merely a shortage in the stock ■ devised by the testator and not a contradiction in the legacies of the stock.
 

 With reference to the second issue, counsel for the widow state that it appears to be the weight of authority in the common law states and in France that where a legacy can be carried out by the executor purchasing the article for the legatee that course will be followed and the legacy does not adeem. They concede that we do not have in our Revised Civil Code any article under which the Court could authorize the executor to purchase a sufficient number of shares to make up the deficiency. There is no showing that the common law and French law are in any way comparable with our Civil Code on this subject. The testator in his will did not leave any instructions either express or implied which would justify the Court in ordering the executors to purchase sufficient stock in order that all of the legacies might be fully carried out. Since our law and the testament of the deceased do not expressly or impliedly authorize the executors to pursue such a course, it is our opinion that the widow’s contention on this score is untenable.
 

 In connection with her first alternative plea that the executors should be authorized to make up the difference in cash, due to lack of sufficient shares of Whitney National Bank stock to carry out all of the legacies, it is sufficient to say that neither, the law nor the will authorize such procedure in a situation as that which now confronts the Court.
 

 Article 1634 of the Revised Civil Code provides: “Particular legacies must be discharged in preference to all others, even though they exhaust the whole succession, or all that remains after the payment of the debts and the contributions for the legiti
 
 *620
 
 mate portion, in Case there are forced heirs”.
 

 It must he remembered that the particular legacies in question are not legacies of particular objects and are not- particular legacies of cash. The testator has limited these particular bequests to shares of stock of the Whitney National Bank. We certainly cannot disregard the expressed intention of the testator to bequeath Whitney National Bank stock by substituting in lieu of a part of the bequests, cash. It is our opinion that the provisions of Article 1634 of the Revised Civil Code are inapplicable here.
 

 With reference to the second alternative plea of the widow that the legacies should be proportionately reduced because they are all valid and there is in-sufficient stock to satisfy them fully, Article 1635 is pertinent:
 

 “1635. If the effects do not suffice to discharge the particular legacies, the legatees [legacies] of a certain object must be first taken out. The surplus [balance] of the effects must then be proportionately divided among the legatees of sums of money, unless the testator has expressly declared that such a legacy shall be paid in preference to the rest, or that the legacy is given as a recompense for services.” (Brackets ours.)
 

 There is nothing in the record in this case to show why the testator bequeathed more shares of Whitney National Bank stock than he owned. All we know is that there is a shortage of stock. Consequently, the effects, Whitney National Bank stock, which the testator has left and limited or restricted to carrying out these particular legacies are not sufficient to discharge them. There were no particular legacies of a certain object, i.e., a definitely designated certificate of stock of the Whitney National Bank, bequeathed to any of these legatees. If there had been, that particular legacy of a certain object would first be taken out and the surplus or balance of effects, shares o-f stock of the Whitney National Bank, owned by the deceased, would then be proportionately divided among the legatees. The mere fact that, in the case at bar, as far as the Whitney National Bank stock was concerned, there were no particular legacies of particular certificates of shares of bank stock, does not affect the soundness and justice of the principle of distributing the effects, i.e., Whitney National Bank stock covered by these particular legacies, ratably or proportionately among these particular legatees. It was hot expressly declared by the testator that any of the legacies should be paid in preference to the others, nor was it stated' that to any of them was a legacy given as a recompense for services. There is no need of converting the 775 shares of Whitney National Bank stock into cash in order to- proportionately divide them among the legatees, because they are capable of being divided in kind among them.
 

 It is our opinion, since the testator has restricted and limited the particular legacies in question to shares of stock of the Whitney National Bank and there were. insufficient shares of stock to pay them in full, and as there is no express or tacit
 
 *622
 
 Tevocation of any of the legacies or a pre■ference granted one over the other, the 775 shares of stock must be “proportionately divided,” among the particular legatees of Whitney National Bank stock.
 

 For the reasons assigned, the judgment .appealed from is annulled and the case is remanded to the district court for further proceedings consistent with the views herein expressed; all costs to be borne by the succession.
 

 O’NIELL, C. J., is of the opinion that' the executors should be ordered to buy the number of shares of Whitney National Bank stock necessary to carry out the intention of the testator, — as expressed not only in the will and codicil together, but even in the will itself, where the testator— who was a director in the bank — bequeathed 75 more shares of Whitney National Bank’ stock than he ever owned.
 

 HAMITER, J., absent.