LEMMON, JTudge
^dissenting in part).
The tableau of distribution approved by the majority treats “monetary, real estate and stock holdings” as including only the bank accounts and stocks listed in the inventory.
In my opinion the calculation of decedent’s “monetary, real estate and stock holdings” should also include the bonds (which comprise 90% of her estate), as well as stocks, as it appears clear to me that this was her testamentary intent.
I believe that courts should not rigidly apply technical meaning to terms without reference to the intention of the testator. The ordinary popular meaning of “monetary, real estate and stock holdings” to a layman with average knowledge of commercial terms could include bonds, and if the intention of the testator was to include bonds, this intention should prevail over a technical construction of this phrase. The effect to be given a bequest of stock therefore depends on the intention of the testator [1], as manifested by the circumstances surrounding the disposition.
*253 In this case the inventory consisted the following: of
Separate Property:
Securities (all bonds) $101,841.50 Checking accounts 366.35
Clothing 295.00
Jewelry 4,309,70
Total $106,812.55
Community Property:
Securities $ 1,700.00
Checking accounts 4,881.25
Automobile 200.00
Furniture and related items 606.40
Total $ 7,387.65
Decedent's one-half interest $ 3,693.82
The determination of the testator’s intention as to “monetary, real estate and stock holdings” becomes clear when we examine the document (referred to by the majority) dated January 4, 1961 in the light of this inventory. In this document, written 26 days before the second will, testator divided among five persons her “monetary, real estate and stock holdings” in varying percentages. She then proceeded to make dispositions to various persons of her furniture, of her jewelry, of her clothing and of her personal effects.
She therefore made provision for every item except the automobile in the inventory of assets which existed at her death not long thereafter. She obviously intended to make disposition of everything of value and attempted to do so in minute detail. To conclude that she did not intend to dispose of the bonds, which comprised the vast majority of her estate, is to effectively give no meaning whatsoever to testator’s intentions.
Another important feature of the January 4, 1961 document is the provision “2½% of my monetary, real estate and stock holdings to James Howard Atkinson to be dispensed in accordance with a list provided by me”. While the list does not form part of the record on appeal, the testator certainly did not intend to dispense, according to a list, 2½% of virtually nothing.
In my opinion we can only give effect to testator’s bequest of “monetary, real estate and stock holdings” by holding that “monetary holdings” include bank accounts, which are not technically money but rather claims against a bank for money deposited less money withdrawn, and by holding that “stock holdings” include bonds. Otherwise, where the testator bequeathed 75% and 25% of her “monetary, real estate and stock holdings”, if strict and technical commercial terms are applied, her estate contained no money, no real estate and a negligible amount of stock.
Courts are called upon to interpret wills by giving significance to testamentary intent while not departing from proper signification of the terms of the testament.[2] Where the intention of the testator is clear, as I believe is the case here, this intention should be fulfilled if not destructive to the overall terms of the testament.
Disposition in wills must be understood in the sense in which they can have effect, rather than that in which they can have none. LSA-C.C. art. 1713. Succession of Mulqueeny, 248 La. 659, 181 So.2d 384 (1965). In my opinion the interpretation of the terminology in question, as listed in the tableau of distribution approved by the majority, relegates the disposition to a meaningless gesture and does not give effect to the obvious intention of the testator.
I therefore dissent as to this part of the majority opinion.
I agree that the earlier will was not revoked in its entirety by the later will. However, while the legacies of $30,000.00 and $5,000.00 were not in themselves inconsistent with the legacy of “monetary, real estate and stock holdings” (as I interpret this language), the remaining assets of decedent’s succession are insufficient to pay $35,000.00 in special legacies.
*254 I further note that the January 4, 1961 document was written, dated and signed in apparently the same handwriting as the two wills which were probated. This document further disposed of additional items, which raises further conflict. However, since mine is a minority view, it is of no consequence to discuss these additional problems.

. See, 96 C.J.S. Wills § 780, at page 191; DSA-C.C. arts. 1712,1715.

. LSA-C.C. art. 1712.