421 So.2d 941 (1982)
In the Matter of SUCCESSION OF Warren D. FARR.
No. 82 CA 0074.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Writ Granted December 10, 1982.
*942 Ashton L. Stewart, Baton Rouge, for Mrs. Alice A. Farr and Louisiana National Bank.
Carlos G. Spaht, Baton Rouge, for Presbyterian Church of Baton Rouge and Presbyterian Church of Cranbury, N.J.
Robert D. Hoover, Baton Rouge, for certain defendants-appellees absentees.
Frank W. Middleton, Jr., Baton Rouge, for Burden Memorial Hosp., Inc.
John Dale Powers, Baton Rouge, for Baton Rouge Recreation and Park Comn.
Charles H. Dameron, Baton Rouge, for Our Lady of the Lake Hosp., Inc.
Paul M. Hebert, Jr., Baton Rouge, for Hosp. Affiliates Intern. d/b/a Doctors Memorial Hosp.
Harvey H. Posner, Baton Rouge, for Woman's Hosp. Foundation.
*943 Robert Roland, Baton Rouge, for Baton Rouge General Hosp.
Before COVINGTON, LEAR and LANIER, JJ.
COVINGTON, Judge.
This is an appeal by the First Presbyterian Church of Baton Rouge and the First Presbyterian Church of Cranbury, New Jersey, defendants, from a judgment of the district court, signed on December 7, 1981, in favor of plaintiff, Louisiana National Bank of Baton Rouge, as trustee of the Alice A. Farr Marital Trust and of the Warren D. Farr Residuary Trust, and against the defendants,[1] declaring and decreeing:
"[T]hat the legacy under a universal title to the Alice A. Farr Marital Trust in the last will and testament of Warren D. Farr of `one-half (½) of all my property, both movable and immovable and wherever located, owned at my death' included one-half of all of the property left by Warren D. Farr at his death including, by way of illustration and not as a limitation, one-half of all of the shares of stock of General American Oil Company of Texas, and which legacy included at the termination of the said Alice A. Farr Marital Trust, on August 19, 1980, all of those properties, as set forth in Exhibit III-A, annexed to the petition in this matter, ... and that the residuary legacy to the Warren D. Farr Residuary Trust in the said last will and testament of Warren D. Farr `of the residue and remainder of my estate of every nature and description and wherever located owned at my death' included only the residue of all of the property left by Warren D. Farr at his death, after the said legacy to the said Alice A. Farr Marital Trust, had been deducted, but subject to the other provisions of said last will and testament, and which residuary legacy only included at the termination of the said Warren D. Farr Residuary Trust on August 19,1980, those properties as set forth in Exhibit IIIB, annexed to the petition in this matter..."
This cause commenced as a suit for declaratory judgment brought by the trustee of the two trusts created in the last will and testament of Warren D. Farr, deceased. Mr. Farr died, at the age of 86 years, on April 21, 1976, leaving his widow, Alice A. Farr, and collateral relatives, but no ascendants or descendants. In his testament, a nuncupative will under private signature, dated February 5, 1971, he left certain movable property to his widow, and created two trusts which subsequently terminated by their own terms on the death of Mrs. Farr on August 19, 1980.[2]
*944 The Farr testament consists of five typewritten legal-size sheets and contains three dispositions: first, a bequest to his wife of certain movable property (which is not an issue in this case); second, a bequest to the bank in trust for his wife (the marital trust); and third a bequest in trust for his wife as income beneficiary and 25 others as principal beneficiaries, including the two churches (the residuary trust). There is an alternative bequest, which is of no moment since the contingency of the wife's prior death did not happen.
The provisions of the testament pertinent to this suit are:
"Article II
2.1 To the Louisiana National Bank of Baton Rouge, Louisiana, as Trustee for my wife, Alice A. Farr, I will one-half (½) of all my property, both movable and immovable and wherever located, owned at my death.
2.2 This trust is to be known as the Alice A. Farr Marital Trust and all of the income from this entire trust shall be paid to my wife during her lifetime annually, or, at the Trustee's election at more frequent intervals. My wife shall have the full and unrestricted right to bequeath her entire interest in favor of her estate or to whomever she may see fit, and no person may divert any part of this to any other person than my wife.
2.3 If my wife, Alice A. Farr, survives me, then I will to Louisiana National Bank of Baton Rouge, Baton Rouge, Louisiana, as Trustee, all of the residue and remainder of my estate of every nature and description and wherever located owned at my death in a separate trust to be known as the Warren D. Farr Residuary Trust.
2.4 My wife, Alice A. Farr, shall be income beneficiary of the Warren D. Farr Residuary Trust for her lifetime. All trust income shall be payable to her at least annually or at more frequent intervals as agreed between my wife and trustee.
2.5 The hereinafter listed individuals and institutions are instituted as the principal beneficiaries and successive income beneficiaries of said Warren D. Farr Residuary Trust, in which trust the trustee shall hold all of the remainder of my estate, of every nature and description, for said beneficiaries until the death of the said Alice A. Farr, at the happening of which event the Warren D. Farr Residuary Trust shall terminate and its assets distributed to said beneficiaries, who shall take as special and residuary legatees of said trust funds, the residuary legatees, however, being distributed any other property I might own at my death. The said beneficiaries (and heirs) shall take said property in the following amounts and proportions, provided, however, that any asset not specifically disposed of, or accruing as a result of the death of any beneficiary or legatee shall be allotted to the residuary legatees.
Special:

a. My nephew, Walter R. Farr $2,500.00
b. My grandniece, Mrs. 6,000.00
 Virginia S. Tantum
c. S. Warren Tantum 15,000.00
d. Julia Mae Arbour 4,000.00
e. The First Presbyterian 50% of the
 Church, Cranbury, New total number
 Jersey, in honor of my of shares of
 father, David Farr, and my stock owned
 mother, Virginia Farr; my by me in
 sister, Lillie Chamberlin, General Oil
 born Lillie Farr, and her at my death.
 husband Lewis Chamberlin.
f. The First Presbyterian 50% of the
 Church Baton Rouge, total number
 Louisiana of shares of
 stock owned
 by me in
 General
 American Oil
 at my
 death."

In its petition, the trustee seeks a declaratory judgment decreeing that Mr. Farr's testament bequeathed "one-half (½) of all" his property at his death to the marital trust in which the widow was named as both income and principal beneficiary and the "residue and remainder" of his estate, after payment of taxes, to the residuary trust in which Mrs. Farr was named as income beneficiary and 25 individuals and institutions as principal beneficiaries. Only *945 the two churches have questioned the trustee's construction of the will. They contend that under the specific language of the nuncupative testament the shares of General American Oil should not be placed in the marital trust, but rather all of such stock belongs to the residuary trust (and now to the two churches).
Simply stated, the issue involved is the interpretation to be given certain language in the testament of the deceased. The only assets in dispute are the aforementioned shares of General American Oil. Specifically, the question is whether one-half of the stock, which was owned by Mr. Farr's separate estate was left to the bank in trust for his wife (in the marital trust) and the remaining half left in the residuary trust, or whether all of said shares were left to the residuary trust.
We believe that the interpretation placed upon the testament by the trustee and confirmed by the district court is the correct one. We have carefully examined the testament, and the relevant codal articles and jurisprudence in connection therewith, and conclude that one-half of the stock was left to the marital trust and one-half to the residuary trust. All of said stock was not left to the residuary trust.
The function of the court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will. This intention must be determined from the will as a whole, and effect must be given to every part of the will as far as the law will permit. No part of a will should be rejected, except that which the law makes it necessary to reject. Where it is a question of the choice between two interpretations, one of which will effectuate, and the other defeat, a testator's intention, the court will choose the one which will effectuate. Courts have also recognized that in the interpretation of wills, the first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. Moreover, in order to interpret a will the testator's intention must be ascertained without departing from the proper significance of the terms of the will, LSA-C.C. art. 1712. The law presumes that the testator intends to dispose of all of his estate in the will if the will contains no declaration to the contrary. Principally, then, the court must endeavor to find out the testator's intention. All of the rules are but means to that end. These principles of interpretation are sanctioned in Carter v. Succession of Carter, 332 So.2d 439 (La. 1976); and in Successions of Johnson v. Williams, 387 So.2d 1378 (La.App. 2 Cir. 1980).

Assignment of Error No. 1
The churches contend that the trial court erred in finding that title to the trust property was in the trustee. They urge that in the case of Succession of Stewart, 301 So.2d 872 (La.1974), the court held that the bequest to a trustee is not made to it as owner or as beneficiary but rather "in trust" subject to the trust instrument. And, that the court held further that the trustee is charged only with the administration of the trust property for the benefit of the beneficiaries pending its distribution to them. We need only say that the Stewart case is factually distinguishable; that case was primarily concerned with holding that a bequest in trust for named beneficiaries did not constitute a prohibited substitution. Thus, we find that the interpretation of Succession of Stewart by the appellants is not controlling in the instant case and has no bearing on the question before this Court. In any event, it is inconsequential in the resolution of the case before us whether the title or ownership in the marital trust is in the bank as trustee, or in Mrs. Farr as beneficiary; the thing bequeathed is "one-half (½) of all my property." By the same token, it is immaterial whether title or ownership is in the bank as trustee for the beneficiaries of the residuary trust, or in the beneficiaries; in either case, title is to "all of the residue and remainder" of Mr. Farr's estate.

Assignment of Error No. 2
It is the appellants' position that the trial court's finding that "it was Farr's intention *946 to give the maximum amount to Mrs. Farr while minimizing the federal tax consequences" does not support the court's ultimate conclusion that Mr. Farr intended that the churches receive only one-half, instead of all, of his shares of General American Oil. Appellants argue that, inasmuch as the value of Farr's half interest in the community property exceeded the maximum amount of the marital deduction, he could have satisfied the marital deduction by the use of community property alone, without using any of his separate property. Then, the appellants surmise that Mr. Farr intended to treat his separate property differently than he treated his community property. This assignment is without merit. The will shows that Mr. Farr bequeathed to the marital trust "one-half (½) of all my property." This will does not exclude Farr's separate property from this disposition, or limit the disposition to just community property. The disposition embraces a fractional part of all property, both community and separate.
In remarking on this issue, the trial judge said:
"It is inconceivable to this court that Farr intended to omit his largest single item of property and his only separate property when he established the marital trust using the words, `one-half (½) of all my property.'"

Assignment of Error No. 3
In this assignment of error, the appellants argue that the trial court failed to give proper meaning to the language used by the testator himself in his testament. They assert that reference to the testament will show that it provides that at the death of the wife of the deceased, the residuary trust was to terminate and the assets distributed to "beneficiaries, who shall take as special and residuary legatees said trust funds ..." And, further, they point out that to each of the churches under "Special," he bequeathed "50% of the total number of shares of stock owned by me in General American Oil at my death." In this assignment of error, appellants complain that the trial court ignored the principle that a court must give meaning to all testamentary language. From our reading of the trial judge's reasons for judgment, we believe that, rather than disregarding the foregoing rule of interpretation, he gave full measure to it. Pertinent herein is the rule that a court must give meaning to all testamentary language in a will and avoid an interpretation which renders such language meaningless or reduces it to surplusage. Succession of Waterman, 298 So.2d 731 (La.1974); Succession of Griffin, 366 So.2d 1029 (La.App. 1 Cir.1978). It appears that the court relied on the words of the will in their entirety in order to determine the intention of the testator.
If only the "special" dispositions were considered, it might be arguable that the testator intended each church to have 50% of all General American Oil shares at his death. Considering however, the language of the will in its entirety and, including particularly the disposition to the marital trust of one-half of "all my property," it appears to us that Mr. Farr intended that all of his property, of whatever nature, whether community or separate, was to be included within that disposition. Moreover, the testator used the language "no person may divert any part of this to any other person than my wife." It is clear that Mr. Farr's wife was to come first in his testament; all other dispositions were subject to her favored treatment, as indicated. To hold otherwise would be to completely ignore the language of the disposition to the marital trust, as well as the language of the will in its entirety, which clearly reflects the intent of the testator that his wife share in all property.

Assignment of Error No. 4
Finally, the appellants submit that the trial court erred in failing to conclude that it was the testator's intention to will and bequeath to the two churches exactly what he specified, to-wit: to each "50% of the total number of shares of stock owned by me in General American Oil at my death." From the record, and especially the language *947 of the will in its entirety, we deem that the testator intended to leave his wife one-half of all his property, without exception. The deceased's will, while fairly lengthy, is relatively simple. Mr. Farr made only three dispositions: first, a bequest to his wife of certain movable property (which is not an issue before us); second, a bequest to Louisiana National Bank in trust for his wife (as both income and principal beneficiary); and third, a bequest to the bank in trust for his wife as income beneficiary, and for some twenty-five parties as principal and successor income beneficiaries, including the two Presbyterian churches opposing the declaratory judgment. There was also an alternative bequest in the event his wife predeceased him.
There is certainly no ambiguity in either paragraphs 2.1 or 2.3. The deceased left one-half of all of his property to his wife, in trust. He left in trust, for the benefit of the named income and principal beneficiaries, all of the residue and remainder of his estate. However, if we were to consider that the reference in paragraph 2.5 to the interest of the two churches as principal beneficiaries in the residue of the residuary trust causes an ambiguity, the will construed as a whole makes the intention of the testator clear. In paragraph 2.2 all income from the marital trust is to be paid to Mrs. Farr, she is to have unrestricted right to bequeath her entire estate to whomever she may see fit, and no one is to divert any part thereof to any one other than the wife. In addition, in paragraph 2.4 she is named as the income beneficiary for life of the residuary trust, under paragraph 5.3, legacies to her are to be free of death taxes, which are to be borne by the residuary legatees. Furthermore, the language which appellants contend encompasses all of the shares of General American Oil is subordinate to the bequest to the trust, of which the named churches are but two of the twenty-five named principal beneficiaries. Their bequest was of the "residue and remainder," and not all of the particular stock. We consider the contention of the appellants to the contrary to be a strained interpretation of the testament, running contrary to well-established rules of testamentary interpretation set out above.
Moreover, to construe the language of the will relative to the stock to mean that the testator intended to leave 100% of such stock to the churches would require a finding that the testator had revoked, in part, his earlier bequest of one-half of all property to the marital trust. Such a revocation cannot be read into this will. The test of whether a legacy in a will is revoked by another legacy in the same will is whether the intention of the testator to revoke is expressed and unequivocal. Succession of Mulqueeny, 248 La. 659, 181 So.2d 384 (1965). We do not find an expressed and unequivocal revocation of any legacy in the will involved in the case at bar. On this same point, the appellants contend that under the definition of a particular legacy, LSA-C.C. art. 1625, they are particular legatees, and as such, under LSA-C.C. art. 1634, they are entitled to have their particular legacies discharged in preference to all other legacies. There is no merit in this contention. The bequest to each church was not a particular legacy. The dispositive language of the will distinctly leaves "all of the residue and remainder of my estate" in the residuary trust. Under the settled jurisprudence of this state, this bequest of the "residue and remainder" is a universal legacy, pursuant to LSA-C.C. art. 1606. Succession of Bannon, 341 So.2d 623 (La.App. 4 Cir.1977). Hence, the rules which apply to particular legacies are inapplicable to the instant dispositions.
Furthermore, even if we were to hold that the legacy in question is a particular legacy, rather than a universal legacy, the appellants' problem would not be solved. We have a question of "what thing" was left to the churches, not a question of discharging it in preference to any other legacy. We find that the bequest to the residuary trust, in which the churches were named as principal beneficiaries, constituted a bequest of the residuum of the estate, one-half of which had already been granted to the marital trust in the same *948 testament, so that only one-half of the stock in General American Oil was available for distribution to the churches as principal beneficiaries. The other half had already been given to the marital trust for the benefit of Mrs. Farr as principal beneficiary, and was, therefore, in her estate when she died.
These are the main questions which have been presented. The views we have expressed lead to the same conclusion that was reached by the trial judge; accordingly, we affirm the judgment appealed at the appellants' costs.
AFFIRMED.
NOTES
[1] The defendants in this case are: the First Presbyterian Church of Baton Rouge and the First Presbyterian Church of Cranbury, New Jersey, each of whom filed answers contesting the plaintiff's petition; and Warren David McNeely, Warren Lewis Tash, Mrs. Simon M. McNeely, Mrs. Everett Erickson, David Farr, Mrs. Clarence Cambell, Farr Chamberlin, Richard Christenson, Mrs. J.R. Peterson, Lewis Chamberlin, Jr., Mrs. Dorothy Clayton, Barry S. Clayton, Wilton Clayton, Jr., Carol Aaronsen and Alex T. Farr, all of whom being absentees appeared through Robert D. Hoover, the attorney ad hoc appointed by the court to represent them; Sidney V. Arbour, Mrs. Ted Tomeny, Burden Memorial Hospital, Inc., for the use and benefit of the Ollie Steele Burden Manor, Baton Rouge, Louisiana, Our Lady of the Lake Hospital, Inc., Baton Rouge, Louisiana, Woman's Hospital Foundation, Baton Rouge, Louisiana, Baton Rouge General Hospital, as trustee, in trust to provide for the health and welfare of its patients, their families, through the Baton Rouge General Hospital Auxiliary (Pink Ladies), Hospital Affiliates, International, d/b/a Doctors Memorial Hospital, Baton Rouge, Louisiana, and Recreation and Park Commission of the Parish of East Baton Rouge, Louisiana, all of whom concurred in the prayer of the plaintiff's petition.
[2] Mrs. Farr named the following as her residuary legatees: Burden Memorial Hospital, Inc. for the use and benefit of the Ollie Steele Burden Manor, Baton Rouge, Louisiana, Our Lady of the Lake Hospital, Inc., Baton Rouge, Louisiana, Woman's Hospital Foundation, Baton Rouge, Louisiana, Baton Rouge General Hospital, as trustee, in trust to provide for the health and welfare of its patients, their families, through the Baton Rouge General Hospital Auxiliary (Pink Ladies), Doctors Memorial Hospital, Inc., Baton Rouge, Louisiana, and Recreation and Park Commission of the Parish of East Baton Rouge, Louisiana.