716 So.2d 410 (1998)
SUCCESSION OF Mary Jean Frank NEFF.
No. 98-CA-0123.
Court of Appeal of Louisiana, Fourth Circuit.
June 24, 1998.
Robert Angelle, Metairie, and Michael G. Gaffney, New Orleans, for Karen Neff Sanches/Appellant.
Raymond P. Ladouceur, Jane C. Alvarez, Ladouceur and Ladouceur, L.L.C., New Orleans, for Katherine Neff Brand/Appellee.
Before SCHOTT, C.J., and BARRY and JONES, JJ.
BARRY, Judge.
A testamentary legatee appeals a judgment which interprets two provisions of a testament. The trial court held that the last provision controlled. We reverse.

Facts
Mary Jean Frank Neff executed a testamentary will dated March 8, 1994. She died March 10, 1994. There is no dispute that the will was in valid form.
The legatees are decedent's children, Karen Neff Sanches and Katherine Neff Brand. The parties seek interpretation of Paragraphs 5 and 6:
[Paragraph 5] I hereby bequeath the disposable portion of my estate to my beloved daughter, Karen Neff Sanches, the remaining portion of my estate.
[Paragraph 6] I further bequeath my entire estate to my beloved daughters, KATHERINE NEFF BRAND and KAREN *411 NEFF SANCHES, to share and share alike.
Sanches argued that she is entitled to the disposable portion and the balance is to be shared. Brand submitted that the provisions are contradictory because Paragraph 5 left the disposable portion to one legatee and Paragraph 6 divided the "entire estate." Brand contended that Paragraph 6 controls.
Sanches attempted to introduce into evidence the deposition testimony of the late Francis L. Morris, the attorney who prepared decedent's will, to prove decedent's intent. The trial court granted Brand's motion in limine and excluded the deposition which was proffered.
The trial court held that Paragraph 6 controlled and the entire estate is to be shared equally by Sanches and Brand. The court reasoned that Paragraphs 5 and 6 are unambiguous but contradictory. The court adopted Paragraph 6 as the last expression of decedent's will.
Sanches's appeal argues the will is ambiguous; parol evidence is admissible to determine decedent's intent; the will should be interpreted to leave the disposable portion to Sanches and to divide the remaining (forced) portion between Sanches and Brand.
When interpreting a will, La. C.C. art. 1712 provides:

the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the testament. [Emphasis added.]
The first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. Succession of Hurst v. Gremillion, 552 So.2d 799, 801 (La.App. 1st Cir.1989), citing Carter v. Succession of Carter, 332 So.2d 439, 442 (La. 1976). The testator is not supposed to be propounding riddles, but rather to be conveying his ideas to the best of his ability so as to be correctly understood at first view. Id.
When the testator's intention cannot be ascertained from the terms of the will, recourse must be had "to all circumstances which may aid in the discovery of his intention." La. C.C. art. 1715. Thus, where there is ambiguity as to the legatee, or the thing which the testator intended to bequeath, or the portion of the legacy, or where there is doubt as to the sense in which the words are used by the testator, resort may be had to extrinsic evidence. Succession of Merritt, 581 So.2d 728, 730 (La.App. 1st Cir.), writ den. 584 So.2d 1165 (La.1991); Succession of Hurst v. Gremillion, 552 So.2d at 801.
The court uses extrinsic evidence to determine what the words of the testator, as written, actually mean. It is important to note that such evidence is used solely to resolve ambiguity, not to rewrite the will or do violence to its terms. [Emphasis in original]
Succession of Hurst, 552 So.2d at 801, citing Succession of Jones, 369 So.2d 1143, 1150-1151 (La.App. 1st Cir.), writ den. 373 So.2d 526 (La.1979).
The interpretation of contradictory dispositions is governed by La. C.C. art. 1723:
When a person had ordered two things, which are contradictory, that which is last written is presumed to be the will of the testator, in which he has persevered, and a derogation to what has before been written to the contrary.
Art. 1723 has frequently been applied to interpret a provision in a codicil that is inconsistent with the statutory will. See Succession of Moran, 479 So.2d 350, 354 (La.1985). It has also been applied to interpret inconsistent provisions within the same instrument. Succession of Stewart, 301 So.2d 872 (La. 1974).
In Succession of Mulqueeny, 248 La. 659, 181 So.2d 384 (1965), the court declined to apply Art. 1723 to inconsistent provisions in the same instrument. The testator's will left $5,000 cash to each of three legatees. To the fourth legatee he left all of his homestead "stock" and everything remaining. The tableau of distribution did not recognize the cash legacies and there was no cash in the estate. The cash legatees argued their distributions were payable out of the homestead accounts left to the fourth legatee. The legatee of the homestead accounts argued that the provision leaving the stock to her contradicted the *412 cash legacies and should control. The Supreme Court considered the testator's intent and determined that he must have meant for the cash legacies to be paid from the homestead stock because that was his only source of funds, rejecting the argument that the last legacy controlled.
Such an inference might properly be invoked if the bequest to Miss Early [the fourth legatee] had been made at a later date in a separate instrument or in a codicil to the will. That factual difference might then be an important influence in ascertaining the testator's intention. But we cannot subscribe to her argument in this case when the apparently contradictory dispositions were, in effect, executed simultaneously and appear in the will back to back.... No violence is done to the true signification of the language of the testament by this result. By this solution bequests to all legatees are recognized and given some effect, rather than giving no effect to the three substantial bequests to the Blackmar sisters [the first three legatees] under a contrary decision.
Succession of Mulqueeny, 181 So.2d at 388.
As in Mulqueeny, Paragraphs 5 and 6 were executed simultaneously back to back and their apparent contradiction creates an ambiguity. Because recourse must be to all circumstances that might assist in discovering intent, La. C.C. art. 1715, the deposition of the attorney who prepared the will is admissible.
Morris, the decedent's late attorney, stated that the last clause of Paragraph 5 was misplaced and a typographical error. He said the decedent intended to leave the disposable portion to Sanches and the remainder of the estate to both daughters, share and share alike.
That comports with our natural reading of the entire will. The testator clearly intended to leave the disposable portion to Sanches and "further bequeath" the entire balance of the estate to both heirs. The word "further" clearly expresses the intent that the remainder of the estate was an additional bequest after the legacy of the disposable portion. Our interpretation gives effect to each disposition. See La. C.C. art. 1713.
We hold that the will is ambiguous and extrinsic evidence of surrounding circumstances is admissible to determine the testator's intent. The testator intended to leave the disposable portion of her estate to Sanches and to leave the balance of the estate to Sanches and Brand, share and share alike.
The judgment of the trial court is reversed.
REVERSED.