On Rehearing
CALOGERO, Justice *.
The parties whose monetary interests are affected by the outcome of this case are two churches named in the will of Warren *439 D. Farr,[1] and five hospitals and the Recreation and Park Commission of the Parish of East Baton Rouge named in the will of Warren D. Farr’s widow, Alice A. Farr (these six entities will occasionally be referred to hereinafter as “the hospitals”).[2]
The contest is over one-half of certain shares of stock in General American Oil, the separate property of Warren D. Farr, who died on April 21, 1976.[3] All of the pertinent facts and the history of this litigation are amply set forth in the opinion of the Court of Appeal, Succession of Farr, 421 So.2d 941 (La.App. 1st Cir.1982), and in the opinion of this Court on original hearing. They will not be repeated in full here.
The dispositive question before us was, and is, whether Warren D. Farr left all the shares of his General American Oil stock to the two churches (one-half to each church), by naming them “principal beneficiaries and successive income beneficiaries” in a “Warren D. Farr Residuary Trust” and naming them legatees to all of the stock upon the death of Alice A. Farr and simultaneous termination of the Warren D. Farr Residuary Trust, or whether he left the two churches only one-half of the shares of the stock in this manner, having first, in the will, left one-half of those same shares to an “Alice A. Farr Marital Trust”. If it is the latter, then half of the shares vested, at the outset, in the Alice A. Farr Marital Trust, and upon the death of Alice A. Farr, devolved upon the hospitals Mrs. Farr designated in her will as her residuary legatees.
When first we heard this case we decided that the two churches should receive all, rather than just half of the shares of stock in General American Oil. We did so, attempting to give “full effect” to the disputed provisions of the will, and supported our decision with several plausible legal arguments. We concluded that when the testator first in his will left to the trustee for his wife Alice A. Farr, in the Alice A. Farr Marital Trust, “one-half (⅛) of all of my property, both movable and immovable and wherever located, owned at my death,” he intended that the trust for his wife receive one-half of the “value” of testator’s entire estate at the time of his death. We came to that conclusion as a means of making sense out of apparently ambiguous and conflicting provisions of the will. For, while Paragraph 2.1 did indeed first give Alice, in trust, one-half of all his property, Paragraph 2.5 seemed to give all the General American Oil stock to the two churches when it designated the two churches as principal beneficiaries and successive income beneficiaries of a second instituted “Warren D. Farr Residuary Trust”, each church to receive an asset described as “50% of the total number of shares of stock owned by me in General American Oil at my death.” Obviously if Warren were to predecease Alice, as did in fact later occur, the churches could not have all of this stock owned by Warren at his death, if by the same will in an earlier provision he has directed that one-half of that stock go to his wife’s marital trust, as to the assets of which by will Alice was to *440 have “the full and unrestricted right to bequeath her entire interest”.[4]
We granted a rehearing upon application of the trustee and the hospitals simply because we were not convinced that our original opinion, however well conceived and articulated, was correct. Rehearing applicants urged, among other arguments, that contrary to the opinion author’s assertion that his solution would give effect to all provisions of the will, there would not be sufficient assets available for distribution to the principal beneficiaries of the Residuary Trust. We were not especially impressed with that argument which we therefore will not expound upon here. Nevertheless, we did choose to reconsider the strong arguments espoused originally on behalf of the trustee and the hospitals.
Upon reconsideration we now determine that the resolution more in keeping with the intent of the testator and the language he employed in the will, is that the two churches should receive only one-half rather than all of the shares of stock in American General Oil.
One matter upon which we did not focus originally was Paragraph 3.1 of the will. That provision helps us to understand why the central ambiguity in the will came about in the first place. Farr at Paragraph 3.1[5] said that if my “wife [does not survive me, but rather] predecease[s] me, ... I will ... all of the property owned by me at the time of my death ... to the individuals and institutions named in the Warren D. Farr Residuary Trust in the amounts and properties and proportions and conditions therein set forth.” And, of course, therein, at Paragraph 2.5 under “Special,” he directed at subparagraphs e and / that each of the churches receive “50% of the total number of shares of stock owned by me in General American Oil at my death.” This language, half of all shares owned at my death to each of two churches, a disposition of the entirety of the shares, makes sense in the eventuality that Alice were to predecease Warren, for in that event all of the shares in General American Oil would at his death be owned by him (remember, this stock was separate property of Warren’s).
That same language does not, however, make sense in the first alternative, that Warren should die first. In that eventuality what he provided early on in the will was that his wife should receive all of his right, title and interest in certain corporeal movable property, excluding stocks, bonds and cash. Then he created an “Alice A. Farr Marital Trust” and named Louisiana National Bank of Baton'Rouge as trustee for his wife; and he willed to the bank as trustee for his wife “one-half (¾⅛) of all of my property both movable and immovable and wherever located, owned at my death.” Then at Paragraph 2.3 he also willed to the Louisiana National Bank of Baton Rouge as trustee “all of the residue and remainder of my estate of every nature and description and wherever located owned at my death in a separate trust to be known as the Warren D. Farr Residuary Trust.” With respect to that trust he named his wife Alice A. Farr the income beneficiary for her lifetime and dictated that such trust should terminate at Alice’s death. With respect to that trust he directed that the trustee “shall hold all of the remainder of my estate of every nature and description,” and he instituted as the principal beneficiaries and successive income beneficiaries the two churches and certain designated persons. He thereupon included the ambiguous language that “[t]he said beneficiaries (and heirs) shall take said property in the following amounts and proportions,” *441 and listed in the immediately succeeding paragraph designated “Special” at e and f the two churches and the assets described as “50% of the total number of shares of stock owned by me in General American Oil at my death.”
The arguments which persuade us to rule as we now do are as follows.
First and foremost we are impressed with the intent of the testator, and that is to favor his wife above all else. He left his wife a full one-half of all of the property he owned at his death, admittedly in a trust, where she was the income and principal beneficiary. He provided in the will that “no person may divert any part of this to any other person than my wife.” He made sure that his wife would not have to pay any taxes by providing that the residuary legatees should pay all inheritance, estate or other taxes due upon his death.[6] After giving his wife in trust half of all the property owned at his death he left only the “residue and remainder” to the residuary trust. And in Paragraph 2.5, with respect to the principal beneficiaries of this “residue and remainder” legacy, he recited that the beneficiaries “... shall take as special and residuary legatees of said trust funds ...,” and noted that the “said beneficiaries (and heirs) shall take said property in the following amounts and proportions ...” (emphasis added). “Said property” can only refer to the “residue and remainder”, and that “residue and remainder” included only one-half of the stock since the first legacy to the marital trust had already disposed of half of this stock.
In our original opinion we sought a means of reconciling the ambiguities in the will, and in so doing we read the testator’s outset bequest to his wife (“one-half (V2) of all my property) as being one-half of the value of the entire estate at the time of his death.
That simply cannot have been his intention we now determine, when the testator bequeathed for his wife “one-half (V2) of all of my property, both movable and immovable and wherever located, owned at my death.”
These constitute the reasons why we now conclude that the district court and the Court of Appeal were correct in their judgments in which they favored the hospitals by decreeing that they, and not the two churches, were entitled to the controverted one-half of the shares in General American Oil left by Warren D. Farr at his death. Warren Farr left these shares in trust to his wife, Alice A. Farr, and she in turn left them to the hospitals in her will.

Decree

Accordingly, the original opinion and judgment of this Court are reversed and the judgment of the district court and the Court of Appeal reinstated.
ORIGINAL OPINION REVERSED; JUDGMENTS OF DISTRICT COURT AND COURT OF APPEAL REINSTATED.
WATSON, J., concurs with reasons.
DENNIS, J., dissents being of the opinion that the original decision was correct.
BLANCHE, J., recused.

 Lawrence A. Chehardy, Justice ad hoc sitting for Associate Justice Fred A. Blanche, Jr.

. First Presbyterian Church of Baton Rouge and First Presbyterian Church of Cranbury, New Jersey.

. 1) Burden Memorial Hospital, Inc. for the use and benefit of the Ollie Steele Burden Manor, Baton Rouge, Louisiana,
2) Our Lady of the Lake Hospital, Inc., Baton Rouge, Louisiana,
3) Woman’s Hospital Foundation, Baton Rouge, Louisiana,
4) Baton Rouge General Hospital, as trustee, in trust to provide for the health and welfare of its patients and their families, through the Baton Rouge General Hospital Auxiliary (Pink Ladies),
5) Doctors Memorial Hospital, Inc., Baton Rouge, Louisiana, and
6) Recreation and Park Commission of the Parish of East Baton Rouge, Louisiana.

. All of the property of Warren D. Farr except the shares of General American Oil stock belonged at Farr’s death to the community of acquets and gains existing between Warren D. Farr and Alice A. Farr, his wife. Mr. Farr’s will was written on February 5, 1971. He died on April 21, 1976, and at that time the stock was valued at 1167,748.00. At the time of Mrs. Farr’s death on August 19, 1980, the stock was valued in excess of $630,000.00.

. Paragraph 2.2 provides in part: ".... My wife shall have the full and unrestricted right to bequeath her entire interest in favor of her estate or to whomever she may see fit, and no person may divert any part of this to any other person than my wife.”

. Paragraph 3.1 provides:
3.1 Should, however, my wife, Alice A. Farr, predecease me, then and in that event, I will and bequeath all of the property owned by me at the time of my death, of every kind and description and wherever located, to the individuals and institutions named in the above Warren D. Farr Residuary Trust in the amounts and properties and proportions and conditions therein set forth....

. Paragraph 5.3 reads: "Should there be any inheritance, estate or other taxes due upon my death, I wish such taxes to be paid by the residuary legatees and no such taxes shall be paid or borne in whole or in part by my wife, Alice A. Farr. However, should there he any inheritance, estate or other taxes due because of the inclusion of the proceeds of any life insurance policy in my estate, then I wish the named beneficiary of such policy or policies, if any, to pay the proportionate share of such tax by inclusion of such insurance proceeds in the computation of that tax.”